JAMES P. LATTOMUS

*vs.*

RANDALL B. GARMAN, GEORGE COLLIER AND WILLIAM
WHITAKER, SHERIFF.

*Kent, Sept. T., 1868.*

Set off does not, under the English, as under the civil law, operate immediately
as a satisfaction *pro tanto*, leaving the balance of the larger demand as the
only indebtedness between the parties.   It is a privilege of the defendant,
which may or may not be asserted in an action for the counter demand,
depending not upon a mutuality of debts in their origin, but upon a mutu-
ality of indebtedness between the parties to the action.

A bond sued upon by an assignee is subject, by way of set-off, only to a cross
demand against him, but a credit actually allowed, or which the original
parties had agreed to allow, before assignment, would attach itself to the
debt and bind an assignee for value, whether with or without notice.

A statement in the answer, of such matters as, in their nature could not be known
to the defendant, personally, unless by means of such investigation as is not
to be presumed, without being specially stated, will, although responsive,
have only the force of an answer upon information and belief, and is not
evidence.

Great credit is due to a list of sales made at a public vendue, as the evidence
provided by the parties as to what was sold, and the prices bid.

An admission relied upon to charge a defendant, made, not in the case but in
conversation or writing, must be taken as a whole, as made, and subject to
any qualification of its effect which was coupled with it.   Such admissions
differ in this respect from a confession and avoidance by answer in the case.

BILL FOR AN INJUNCTION TO RESTRAIN PROCEEDINGS
AT LAW.—The defendant, Collier, held the complainant's
judgment bond for $340, dated February 28th, 1865,
payable in six months, with interest from date.  On March
1st, 1866, this bond was assigned by Collier to Garman,
who proceeded to collect it by execution.   The bill sought
to restrain its collection on the ground that the bond, be-
fore its assignment to Garman, had been discharged.   It

was claimed that the bond had been partly paid by the complainant's share of the proceeds of a peach crop, sold on account of Lattomus and Collier, complainant's net share thereof being $194.06.

Prior to the time when the share of the peach crop was due and payable to the complainant, he was indebted to Collier for a vendue bill amounting to $713.27 which had been partly settled by the bond in question, for $340, and the check of Lattomus for $200, leaving $173.27 due, and to the payment of which the defendents claimed that Collier had a right first to apply the $194.06 received from the sale of the peach crop. But it appeared to be satisfactorily proved that the balance of $173.27, on the vendue bill had been settled between the parties by the due bill of Lattomus for that amount accepted by Collier, and that the proceeds of the peach crop remained applicable as a credit upon the bond. A small reduction in the amount of this credit was sought to be made, for the reason, as claimed in the answer, that there was error in the amount of the vendue bill as it had been rendered, that the sales to complainant really amounted to $744.28, in lieu of $713.27, and that the difference of $31.01 should be deducted from the proceeds of the peach crop before they were applied as a credit to the bond. The difference was claimed as a mistake in the amount of certain carpet and hay sold to complainant, which was stated in the answer as greater than in the bill of sale. But the answer did not allege that the defendant making it had, himself, measured the carpet or weighed the hay.

It was further claimed that as to the residue of the bond, it was subject to a credit arising out of certain charges of the complainant against Collier, stated upon a paper filed, marked A. The question of the proof of these items turned upon the proof of certain admissions of Collier at a trial, before referees, that the amounts were due from him. The proof, however, was, that while he admitted

them to have been originally due, he, at the same time, claimed that they had been settled.

So much of the opinion delivered, as was devoted to an examination of the evidence, is here omitted, the facts, as found, so far as they are material, having been above stated.

*Smithers*, for the complainant.

*E. Saulsbury*, for the defendant, Collier.

*J. B. Penington*, for the defendant, Garman.

THE CHANCELLOR :—

The proof shows that, while Collier held the bond of the complainant, to restrain proceedings upon which this bill is filed, and before it was assigned to Garman, Collier became indebted to the complainant for the sum of $194.06, being the share of the latter of the net proceeds of a peach crop sold for their joint account, and the proceeds of which came into Collier's hands. Next we are to inquire whether this sum of $194.06, in Collier's hands, became a credit to the bond. I do not find that there was, as is alleged by the bill, a special agreement between the parties for such application. Collier's answer denies it. and there is no proof of it. Nevertheless, I am convinced upon all the evidence that, when this sum came into Collier's hands, this bond was the only debt he held against Lattomus, and under these circumstances, being claimed as a set-off, whether with or without any agreement as to the application of the money, it became, by law, a part payment upon the bond ; and Garman becoming subsequently assignee of the bond, took it subject to the credit.

It was insisted in the defense on this point, that there was a balance of $173.27 due to Collier on a vendue bill, for goods sold to the complainant, and that Collier was at liberty to apply the proceeds of the peach crop in his hands to that balance. The proof is wholly irreconcilable with the statement of the answer on this point, and is sufficient to prevail against it, and to establish as a fact in this cause, that the balance of the vendue bill was settled by a due bill given by the complainant, and accepted by Collier.

I have noticed the allegation in Collier's answer, that the sales to complainant amounted to $744.28, instead of $713.27, the amount of the vendue bill rendered and settled by, being an excess of $31.01, which sum, at least, it is claimed, Collier was entitled to have paid out of the proceeds of the peach crop, before they are applied to the bond.

The discrepancy results from a difference as to the quantity of carpet and hay sold to complainant, the answer alleging a larger quantity of each than was charged on the list of sales from which the vendue bill was copied. This statement of Collier is responsive, but it cannot be taken as made upon his own personal knowledge of the fact. The exact quantity of carpet and hay sold, could only be known by Collier, personally, from actual measurement of the carpet or weighing of the hay by him or under his cognizance, which is not suggested. Without this, his answer can have only the force of an answer upon information and belief, and is not evidence under the rule. 2 *Dan. Ch. Pr.* 984 and *note* (1). On this point, great credit is due always to a list of sales, which is the evidence, provided by the parties, as to what was sold and the prices bid, subject to correction, it is true, but only upon a clear mistake either apparent on the face of the list or shewn by proof. In this case the list is entitled to more than usual credit, having been accepted by Collier as

correct, and made the basis of a settlement on April 4th, 1865.

I conclude, then, on this subject, that the complainant, when his net share of the proceeds of the peach crop came to Collier's hands, was indebted only on the bond, to which the share became applicable as a part payment. The exact time when Collier received the money is not proved. I assume it to have been September 15th, allowing the full close of the peach season. There was then due on the bond with its interest, $351.27. Crediting the money in Collier's hands, $194.06, there remained a balance of $157.21. Is this balance subject to any further credit? This brings us to the other branch of the case.

The complainant claims, in addition to his share of the peach crop sales as a credit to the bond, the amount of certain charges against Collier. which are stated on the paper A. These charges amount, in the whole, to $332.67; but the controversy has narrowed itself to such of them only as are marked with the word "Rec'd," amounting to $105, and also a charge for difference on carpet, ($18.33.) These charges, if proved, could not, as mere cross demands, be set off against Garman, who holds the bond, as assignee, pursuant to the statute, for the assignment of bills and specialties. (*Rev. Code* 184.) Set-off does not, under the English law, as under the Civil, operate immediately as a satisfaction, *pro tanto*, leaving the balance of the larger demand as the only indebtedness between the parties. It is, under our law, only a defense, which may, or may not, be asserted in an action for the counter demand. It does not attach itself to the debts so as to pass with them. It is a personal privilege of the defendant, and depends not upon a mutuality of debts in their origin, but upon a *mutuality of indebtedness between the parties to the action.* Rev. Code, 380; *Greene vs. Darling*, 5 *Mason* 214-15; *Howe vs. Sheppard*, 2 *Summ.* 409, Garman, as assignee under the statute, holds this bond in his own right, with power to

sue in his own name. Therefore, clearly, it is subject, by way of set-off, only to a cross demand against him. But it is insisted that these items, amounting to $105, were, before the assignment, a credit against the bond, allowed, as such, by Collier, with notice of which Garman took the bond, that thus the credit became an equity attaching to the bond. An agreement, express or tacit, between the original parties, for crediting a debt in any particular mode with it, or a credit actually allowed between them before assignment, would certainly attach itself to the debt, and bind an assignee even for value, and whether he take with or without notice of such equity ; for of necessity the assignee must take the thing assigned in whatever condition it may then be, and, if injured, is put to his remedy against the assignor. This principle is quite clear. Was there, then, before the assignment of this bond to Garman, such an allowed credit against it for the items of charge on paper A ? As proof of it, the complainant relies upon an alleged admission, that he was chargeable with these items, made by Collier before the referees, and more than this, that the amount of them, $105, was a *sum in his hands applicable to the complainant's indebtedness to him*, which indebtedness of the complainant was the bond alone, so that, in effect, the $105 became an acknowledged credit against the bond, and the right to it an equity attaching to the debt.

After a patient and anxious consideration of the whole evidence, I cannot find such an admission by Collier sufficiently proved. Upon the evidence presented by this record, I feel obliged to conclude that Collier, before the referees, while admitting that these charges on paper A, were originally due, claimed, nevertheless, that they had been settled. It is hardly necessary to add that this does not support the allegation of the bill, that he admitted the amount of these charges to be then in his hands as a credit applicable to the bond. The admission, as proved, taken alone, would be insufficient to charge, in any way, the party

making it. For the claim, by prior settlement, to a dis-
charge, if not discredited, must be taken as part of the
admission and qualifies its effect. Some evidence, though
it may be little, is necessary to discredit it, and there is
none. *Gresley's Eq. Ev.* 357 ; *Randle vs. Blackburn*, 5
*Taunt.* 245 ; *Carver vs. Tracy*, 3 *Johns.* 427 ; *Wailing
vs. Toll*, 9 *Johns.* 141 ; *Credit vs. Brown*, 10 *Johns* 365 ;
*Smith vs. Jones*, 15 *Johns.* 229 ; *Cowen & Hill's Notes to
Phillips on Ev. Part I, note* 214. In this respect an admis-
sion made not in the cause, but in conversation or writings,
put in evidence, is distinguishable from a confession and
avoidance, by answer in the cause. The latter is admission
by way of pleading, made to form the issues in the cause,
and as well in equity as at law, the defendant is held to
his confession, and put to prove the matter of avoidance.
2 *Evans Pothier*, 157–8 ; *Hart vs. Ten Eyck*, 2 *Johns. Ch.*
90.

It remains only to notice the argument of the com-
plainant's counsel, that Collier, by his answer, admits his
indebtedness upon the items marked "Rec'd.," as well as
upon the charge for difference on carpet which is not so
marked. On examination of his answer, however, I do not
find that he admits himself to be justly charged with any
of these items, except three ; viz:—the seed, oats, the
repairs on pump, and the difference upon the carpet. As to
these three, there is a sufficient admission to charge Col-
lier in a suit by Lattomus to have sustained a set-off
against the bond while it was held by Collier. But the
admission does not go far enough to establish the amount
of these three items as a credit allowed upon the bond be-
fore its assignment—an equity attaching to it, and,
therefore, enforceable against the assignee.

My conclusion upon the whole case is, to credit this
bond only with the complainants net share of proceeds of
the peach crop, $194.06, as of September 15th, 1865. This
will leave due a balance of $157.21, with interest from

September 15, 1865, and costs on the judgment. The de-
cree will be to dissolve the injunction, so far as it restrains
the defendant, Garman, from collecting that sum, and to
make the injunction perpetual against the collection of
any further sum,—the defendants to pay the costs.