## Richmond.

### Chapman v. Chapman and Others.

#### April 25, 1895.

| 91 | 397 |
|---|---|
| 92 | 232 |
| 91 | 397 |
| 93 | 622 |
| 91 | 397 |
| 95 | 812 |
| 91 | 397 |
| 97 | 121 |
| 91 | 397 |
| f98 | 168 |
| 91 | 397 |
| d102 | 410 |
| q102 | 789 |
| 91 | 397 |
| 105 | 180 |
| 105 | 476 |
| 91 | 397 |
| 106 | 317 |
| 91 | 397 |
| 108 | 866 |

1. Adverse Possession—*Vendor and Vendee.*—A purchaser who has paid all of the purchase money and entered into possession, but who has not obtained the legal title of his vendor, does not hold adversely to his vendor, but in subordination to and under the protection of the title of his vendor, and no length of time is sufficient for such possession to ripen silently into a title by adverse possession. Adverse possession is not the mere holding over against the will of the party from whom the possession is obtained. It is the holding by a claim of *title,* adverse to *another's title,* that constitutes adverse possession.

2. Adverse Possession—*Vendor and Vendee—Disclaimer—Limitation.*—Before adverse possession can arise between a vendor and his vendee, or between the grantee of the vendor and such vendee, where the vendor has retained the title, and before the statute of limitations will commence to run, the vendee must have dissevered the privity of title between them by the assertion of an adverse right, and must openly and continuously disclaim the title of his vendor; and such disclaimer must be clearly brought home to the knowledge of the vendor or his grantee.

3. Trustees—*Bona Fide Purchaser—Possession is Notice.*—Trustees under a deed of trust to secure antecedent debts are purchasers for value. But whether they are *bona fide* purchasers without notice depends on the facts of the case. The open and peaceable possession of land under a claim of right is notice to all the world of the right or claim of the person in possession; and when one buys land in the possession of another than his vendor or grantor, he is bound to take notice of such possession and of all that it imports. Such notice is the same, in effect, as the notice which is imputed by the recording acts. A subsequent purchaser of such land is affected with notice of whatever claim or interest the person in possession has, and which an inquiry into the possession would have revealed.

4. Adverse Possession—*Notice—Continuous Possession.*—Open, peaceable,

and exclusive possession of lands by another than the grantor, at the time they are conveyed to trustees, is notice of the right or claim of the person in possession. But the actual possession need not have been continuous and unbroken. The vital question is, was he in possession under a claim of right at the time the lands were conveyed to the trustees.

5. TRUSTEES—*Joint Trustees—Notice to One Notice to All—Bona Fide Purchasers.*—Where property is conveyed to two or more trustees jointly to secure debts, the estate they take is joint and inseverable, their title joint and indivisible. Hence, notice to one of such trustees is notice to all. There can be no such thing as a purchase partly *bona fide.*

6. CHANCERY PRACTICE—*Answer of One of Two Joint Trustees—Notice.*—On a bill filed against two trustees charging notice to one, the trustee charged with notice filed no answer to the bill, though his co-trustee did, denying the allegations of the bill. The effect of this answer was merely to present an issue and throw the burden of proof on the complainant. It could have no further weight.

Appeal from a decree of the Circuit Court of Madison county, pronounced September 26, 1891, in a suit in chancery wherein the appellant was the complainant, and the appellees the defendants.

*Reversed.*

This was a bill filed to enjoin the sale of two tracts of land claimed by the complainant. The facts sufficiently appear in the opinion of the court.

*J. Catlett Gibson,* for appellant.

*James Hay* and *T. C. Gordon,* for appellees.

RIELY, J., delivered the opinion of the court.

This is a controversy between the owner of the equitable title and the holders of the legal title to certain lands. Both claim under the same vendor.

The appellant, Bernard T. Chapman, claims the lands by

right of purchase, the payment of all the purchase money, and the delivery to him of the possession in pursuance of his purchase, although the title to the lands has never been conveyed to him.

Long after he had acquired the said lands, his father, Thomas W. Chapman, from whom he claims, and in whom was the legal title, conveyed them, along with other lands belonging to him, to James Hay and Thomas A. Chapman, in trust to secure his creditors; and the trustees claim the lands in possession of the appellant as *bona fide* purchasers for value, without notice of any right in him to them.

The appellant bases his right to hold the lands on several grounds.

The first ground on which he relies is that of adverse possession under claim of title for more than fifteen years, the period of the statutory bar. This pretension, under the circumstances of this case, cannot be sustained. He purchased one part of the lands of his father in the year 1870, and acquired the other part in the year 1874, and took possession of each parcel at the time of the purchase, or very soon thereafter. He entered into possession of both parcels under his contracts of purchase. By such purchase, and the payment of the entire purchase money, he acquired the full equitable title, but such equitable title was derived from his vendor, who retained the legal title for future conveyance. In such case the vendee cannot be said to hold adversely to his vendor. *Clark* v. *McClure*, 10 Gratt. 305; *Creigh's Heirs* v. *Henson*, Ib. 231; *Nowlin* v. *Reynolds*, 25 Gratt. 137. He holds in subordination to and under the protection of the title of his vendor, and no length of time is sufficient for such possession to ripen silently into a title by adverse possession. Such possession is in privity with and in subserviency to the legal title of his vendor, and he is not allowed to impeach or assail it. As was said by President Tucker in *Williams* v.

*Snidow*, 4 Leigh 14, 20: "Adverse possession is not the mere holding over against the will of the party from whom you obtain the possession. It is the holding by claim of *title*, adverse to *another's* title, that constitutes adverse possession."

Before adverse possession can arise between a vendor and his vendee, or between the grantee of the vendor and such vendee, where the vendor has retained the title, and the statute of limitations commences to run the vendee must have dissevered the privity of title between them by the assertion of an adverse right, and openly and continuously disclaimed the title of his vendor, and such disclaimer be clearly brought home to the knowledge of the vendor or his grantee. *Creekmur* v. *Creekmur*, 75 Va. 430, 436; *Whitlock* v. *Johnson*, 87 Va. 323, 327. There has been no disavowal by the appellant of the title of his vendor, and the claim of adverse possession cannot avail him.

The next and main ground upon which the appellant relies is that the trustees are not *bonà fide* purchasers for value without notice. They are unquestionably, under many decisions of this court, purchasers for value. *Evans, trustee,* v. *Greenhow et als.*, 15 Gratt. 153; *Wickham & Goshorn* v. *Lewis, Martin & Co.*, 13 Gratt. 427; *Exchange Bank* v. *Knox et als.*, 19 Gratt. 739; *Shurtz et als.* v. *Johnson et als.*, 28 Gratt. 657, 667; *Cammack* v. *Soran*, 30 Gratt. 292; *Williams* v. *Lord & Robinson*, 75 Va. 404; *Witz, Biedler & Co.* v. *Osborn & wife*, 83 Va. 230.

Are they *bona fide* purchasers without notice? The open and peaceable possession of land under a claim of right is notice to all the world of the right or claim of the person in possession; and, where one buys land in the possession of another than his vendor or grantor, he is bound to take notice of such possession and all that it imports. This is, we think, the rule to be deduced from the authorities. It is the duty of a purchaser to inquire into the fact of the possession, and

he will be affected with knowledge of whatever right or interest the party in possession may have in the land which such inquiry would have disclosed. The rule has its foundation in the good faith of the purchaser. If he makes the inquiry, he would acquire knowledge of whatever right or claim, if any, the person in possession may have; and if upon inquiry he receives information of any right or interest of such person in the land, it would be *mala fides* to attempt to deprive him of it. So, if he fail to make inquiry, he has not discharged the duty which good faith imposed on him; and whatever knowledge he might have acquired by means of an inquiry duly and reasonably prosecuted the law imputes to him. The purchaser is therefore charged with notice of the possession, and of whatever right, interest, or claim the person in possession may have, when the party from whom he buys is not the person in possession of the land.

Such notice is the same in effect as the notice which is imputed by the recording or registry acts. One may purchase land to which another than his vendor has a deed of conveyance, or upon which he has a mortgage duly recorded according to the statute for the recordation of deeds, but of which the purchaser knows nothing, yet he will be as conclusively charged with notice of such conveyance or mortgage as if he had examined the record and inspected the deed. He is required for his own protection to examine the records, and the law imputes to him all that such examination would have disclosed. Actual, notorious and exclusive possession of land takes the place of the recordation of the instrument of title; and a subsequent purchaser of land in possession of one who is not his vendor is affected with notice of whatever claim or interest the person in possession has, and which an inquiry into the possession would have revealed. He is not permitted to dispute such right or interest unless he has made the inquiry which equity and good conscience impose on him, and such

inquiry, duly prosecuted, has failed to reveal any right or interest in the tenant in possession. This is the established doctrine both in England and in this country.

In the case of *Holmes* v. *Powell*, that eminent jurist, Lord Justice Knight Bruce, said: "I apprehend that by the law of England, when a man is of right and *de facto* in the possession of a corporal hereditament, he is entitled to impute knowledge of that possession to all who deal for any interest in the property, conflicting or inconsistent with the title or alleged title under which he is in possession, or which he has a right to connect with his possession of the property. It is equally a part of the law of the country, as I understand it, that a man who knows, or cannot be heard to deny that he knows, another to be in possession of a certain property, cannot for any civil purpose, as against him at least, be heard to deny having thereby notice of the title or alleged title under which or in respect of which the former is or claims to be in that possession." 8 De Gex, M. & G. 579.

The same general rule, based upon the same motives and reasons, is said by Pomeroy, in his work on Equity Jurisprudence, to be established in the United States by a very great number of decisions. See 2 Pom. Eq. Jur. sec. 614, and the cases cited in the note thereto in support of the text. The rule was recognized by this court in *Rorer Iron Co.* v. *Trout*, 83 Va. 397, 419.

The doctrine has also recently been upheld by the Court of Appeals of New York, in its fullest extent, in the case of *Phelan* v. *Brady*, 119 N. Y. 587. Phelan lent to one John Murphy the sum of $2,000, and took from him a mortgage on a tenement or block containing forty-three rooms or apartments, then occupied by twenty different occupants or families, as tenants from month to month, except that three of the apartments were occupied by Margaret Brady and her husband, who kept a liquor store in a part of the building,

and occupied two living rooms in the rear of the store.   The
wife claimed to be owner of the premises, and collected rents
from the other tenants.   Murphy had a perfect record title to
the premises at the time Phelan lent to him the money and
Murphy executed the mortgage to secure it; but he had
never, in fact, any interest in the property, had never paid
anything for it, was not in possession, and before the execution
of the mortgage had conveyed it by deed to Mrs. Brady, who
was the real owner.   Her deed, however, was not recorded
until several weeks after the recordation of the mortgage.

Phelan had no notice, at the time he made the loan to Mur-
phy and took the mortgage, of any title to the premises in Mrs.
Brady, or of any claim on her part to be the owner; but she
was in the actual possession of the premises under a perfectly
valid but unrecorded deed.   In a contest between her and the
mortgagee, Phelan, the court said: "Her title must therefore
prevail as against the plaintiff.   It matters not, so far as Mrs.
Brady is concerned, that the plaintiff in good faith advanced
his money upon an apparently perfect record title of the de-
fendant, John E. Murphy.   Nor is it of any consequence, so
far as this question is concerned, whether the plaintiff was in
fact ignorant of any right or claim of Mrs. Brady to the
premises.   It is enough that she was in possession under her
deed and the contract of purchase, as that fact operated in
law as notice to the plaintiff of all her rights.   It may be
true, as has been argued by the plaintiff's counsel, that when
a party takes a conveyance of property situated as this was,
occupied by numerous tenants, it would be inconvenient and
difficult for him to ascertain the rights or interests that are
claimed by all or any of them.   But this circumstance cannot
change the rule.   Actual possession of real estate is sufficient
notice to a person proposing to take a mortgage on the
property, and to all the world, of the existence of any right
which the person in possession is able to establish."

It was argued in *Edwards* v. *Thompson*, 71 N. C. 177, where the purchaser was a resident of South Carolina, and bought land in North Carolina, that the question of notice of an equity in derogation of the vendor's right to sell was exclusively one of fact, and that, in order to be fixed upon the purchaser, it must be shown either that he had notice in fact, or else wilfully or impudently omitted to enquire when the means of enquiry were in his reach. "We do not think," said the court, "this is the true principle. On policy, the law avoids such minute and uncertain inquiries. It says that if a contract of sale be registered it is conclusive of notice, notwithstanding the purchaser lived in another State, and did not, in fact, search the register's books. 1 Story, Eq. Jur., sec. 403. And on the same principle it follows that open, notorious and exclusive possession in a person other than his vendor, is a fact of which a purchaser must inform himself, and he is conclusively presumed to have done so."

It appears from the record that Thomas W. Chapman, for the purpose of raising the money to pay a pressing debt, on February 24, 1870, sold certain portions of his real estate to his sons, James C., Thomas A., and Bernard T. Chapman. Each was to pay $500 for the land he got, and this was done, they having borrowed the money for the purpose. The parcel of land bought by Thomas and Bernard was principally mountain land, and at first was held by them jointly.

In 1874 Thomas W. Chapman agreed to buy for his sons Thomas and Bernard the tract of land called the "Yowell Land," which adjoined the land he had sold to them, but he did so in his own name. He retained about fifteen acres, to straighten his own lines, for which he allowed and paid $75, and they took possession of the residue of the tract, and paid the balance of the purchase money.

Thomas and Bernard afterwards divided the lands between themselves so as to throw the share of each into one body, by

which division Bernard acquired all of the Yowell land except the fifteen acres retained by their father, and Thomas received about eighty or ninety acres of Bernard's part of the mountain land.

Subsequently, Thomas W. Chapman conveyed to his sons James C. and Thomas A. Chapman the lands they were respectively entitled to, but failed to make a deed to his son Bernard for his land; and on September 19, 1888, conveyed, among other property, 820 acres of the land on Quaker Run, in Madison county, which included Bernard's part of the mountain land, and the whole of the Yowell land, to James Hay and Thomas A. Chapman, in trust to secure his creditors.

It is shown that Bernard took possession and control of his part of the mountain land in 1870, and of the Yowell land in 1874, as the owner thereof, in accordance with his purchase. He did not reside on the mountain land, as the house thereon had been burned, but in December, 1874, after the purchase of the Yowell land, he moved into the dwelling house on it, and lived there with his wife and children, exercising acts of ownership over all of said lands, until the year 1881, when, his wife having died, leaving several small children, upon the advice of his brother, Thomas A. Chapman, he moved back to his father's home. During the years 1875 to 1881 he made valuable improvements upon the lands. He enlarged the dwelling house by the addition of several rooms, and otherwise improved it. He erected a tenant's house, a large barn, a corn house, and made other improvements, at a total cost of about $1,200.

After the death of his wife, and his removal with his children to his father's home, he rented out his lands to his father for several years, and worked for him for wages. In December, 1887, having in the meantime remarried, he moved back, and again took actual possession of his lands, and has ever since resided on them.

It thus appears that he was the full equitable owner of the lands by purchase and the payment of the entire purchase money, and was in open, peaceable and exclusive possession of them at the time they were conveyed by his father to said trustees. Of this equitable estate the trustees charged with notice. If they had made due enquiry, which his possession made it their duty to do, they would have learned the facts upon which his right of possession was based, and knowledge thereof is by the law imputed to them. They are not, therefore, *bona fide* purchasers without notice, and the appellant is entitled to hold the lands against them.

Stress was laid by the counsel for the appellees upon the absence of Bernard Chapman from the lands between 1881 and December, 1887. The fact of his absence, under the circumstances, does not alter the result. In reply to the argument of abandonment made in the case of *Holmes* v. *Powell*, *supra*, it was said: "But possession of a corporeal hereditament, to be effectual, need not be continually visible or without cessation actively asserted. If a man has once received rightful and actual possession of land, he may go to any distance from it without authorizing any servant or agent or other person to enter upon it or look after it, may leave it for years uncultivated and unused, may set no mark of ownership upon it, and his possession may nevertheless still continue; at least, unless his conduct afford evidence of intentional abandonment, which such conduct as I have mentioned would not necessarily do."

There is no evidence here of intentional abandonment or surrender of his right to the lands. Although he did not reside on them during the period mentioned above, he nevertheless exercised the right of ownership over them by renting them out to his father. And, besides, the vital question is, was he in possession of the lands under a claim of right at the time they were conveyed to the trustees. 2 Pom. Eq. Jur., section 622. Of this the evidence admits of no doubt.

Thomas A. Chapman was not only affected with construc-
tive notice of the right of Bernard Chapman by reason of the
latter's possession of the lands, but the record discloses that
he had that which was superior to notice, and which notice
was intended to supply.   He had *knowledge.*   He knew that
he and Bernard had jointly purchased their lands of their
father and divided the same between them.   He knew that
Bernard, as well as he, had paid for his part.   He knew that
Bernard had entered into possession of it under his contract
of purchase, had put valuable improvements upon it, and was
the real equitable owner.   And he knew that he was in pos-
session and living upon the lands when the deed of trust was
executed.   What was the effect of his knowledge on the title
of himself and his co-trustee under the deed of trust?   Did it
make them both purhasers with notice?   The conveyance was
to them jointly.   The particular estate they took was joint
and inseverable; the title joint and indivisible.  ·To be *bona
fide* purchasers without notice, they must be wholly so.
There can be no such thing as a purchase partly *bona fide.*
If tainted in part, the whole is infected.   Consequently,
notice to one of two or more trustees is notice to all.   *Le
Neve* v. *Le Neve,* 2 White & T. Lead. Cas. Eq. Pt. 1, p. 109;
*Smith* v. *Smith et als.,* 2 Cromp. & M. 230; *Meux* v. *Bell,* 1
Hare, 73;  *Willes* v. *Greenhill,* 4 De Gex, F. & J., 147, 150;
*Bank of U. S.* v. *Davis,* 2 Hill, 453, 464;  *Myers & wife* v.
*Ross et als.,* 3 Head, 59; 2 Pom. Eq. Jur., sec. 667; Lewin
on Trusts, 609-612.

It was claimed by counsel for the appellees, upon the
authority of *Morrison* v. *Bausemer & Co.,* 32 Gratt. ·225,
and *Johnson's Ex'r* v. *National Ex. Bank,* 33 Gratt. 473,
that such knowledge must have been present to the mind of
Thomas A. Chapman at the time the deed of trust was exe-
cuted, ·in order to affect the title in him and his co-trustee,

and fix notice of the prior incumbrance upon the beneficiaries of the trust.

In the case at bar the bill expressly charges that Thomas A. Chapman had "at all times" actual notice of Bernard Chapman's claim and right to the land. He filed no answer to the bill, though his co-trustee did, denying the allegations of the bill. He did not claim to have, nor does it appear that he could have had, personal knowledge of the facts relating to the claim of Bernard Chapman to the land. The effect of his answer was, therefore, merely to present an issue and throw the burden of proof on the complainant. It could have no further weight. It is not required in such case that the denial of the answer shall be overcome by the testimony of two witnesses, or the testimony of one witness accompanied by strong corroborating circumstances. *Dutilh's Adm'r* v. *Coursault*, 5 Cranch C. C. 349; *Lawrence* v. *Lawrence*, 21 N. J. Eq. 319; *Pennington, Adm'r of Patteson*, v. *Gittings, Ex'or*, 2 Gill & J. 208; *Deimel et als.* v. *Brown et als.*, 136 Ill. 506; *Lattomus* v. *Garman*, 3 Del. Ch. 232; *Watson et al.* v. *Palmer et al.*, 5 Ark. 501; *Combs* v. *Boswell et als.*, 1 Dana, 473; 1 Daniell, Ch. Prac. 846, and note thereto; 1 Enc. Pl. & Prac. 947, and cases there cited. Thomas A. Chapman testified in the cause, and it abundantly appears from his deposition that the facts relating to Bernard Chapman's right to the land were distinctly remembered by him; and, from all the circumstances, we cannot doubt that such was the case.

For the foregoing reasons, the decree of the Circuit Court of Madison county must be reversed.

The beneficiaries under the deed of trust were not made parties to the suit, and it is proper to add that it is not intended that they should, as they could not, be concluded by this decision. The court below passed directly on and adversely to the right of Bernard Chapman to the lands, and

this was the subject of the appeal here. The counsel for the appellees made no objection for the want of proper parties, and the appellant, who was the plaintiff in the court below, could not complain of his own omission. Under these circumstances, and for the reason that counsel seemed to desire that we do so, we have proceeded, in the absence of the beneficiaries as parties, to consider and pass upon the legal questions involved in the appeal.

REVERSED.