### BREEDEN v. BREEDEN et al.

(Circuit Court of Appeals, Fourth Circuit. December 20, 1915.)

No. 1380.

JUDGMENT ⬡828—CONCLUSIVENESS OF ADJUDICATION—TITLE TO LAND.

A decree of a state court involving title to a tract of land construed, and *held* a bar to a subsequent suit in a federal court between the same parties involving title to the same land and the same issues, all of which were either directly or inferentially determined by such decree.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. ⬡828.]

Appeal from the District Court of the United States for the Western District of Virginia, at Harrisonburg; Henry Clay McDowell, Judge.

Suit in equity by Thomas J. Breeden against Philip J. Breeden and others. Decree for defendants, and complainant appeals. Affirmed.

John E. Roller, of Harrisonburg, Va., for appellant.
George N. Conrad, of Harrisonburg, Va. (Conrad & Conrad, of Harrisonburg, Va., on the brief), for appellees.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge. A bill was filed in the United States District Court for the Western District of Virginia by plaintiff against defendants, in which it is alleged that on the 23d day of May, 1844, James Breeden, Sr., and wife, conveyed to James A. Breeden, one of his sons, a tract of mountain land containing about 1,500 acres, in consideration of which James A. Breeden agreed to pay a debt for his father amounting to $25 and to support and maintain his father and mother during their respective lives; that on the 1st day of January, 1853, James A. Breeden sold and conveyed to Elias Breeden, his brother, a part of the original tract for the sum of $200; on the 5th day of September, 1853, he sold and conveyed to Richard Breeden, another brother, a tract of 25 acres, also a part of the original tract, for the sum of $20, making in all a sum much greater than that which he had advanced his father in the first instance.

It is further alleged that some time thereafter James A. Breeden went to one of the Western States, and, recognizing that the obligation was upon him to maintain and support his father and mother during their respective lives, entered into a contract in writing with Lucinda Breeden, his sister (attested by Richard Breeden and Job Breeden, two of his brothers), in which it was agreed that Lucinda should have the remainder of the tract, amounting to 1,175 acres, for the maintenance and support of the father and mother during their lives;

---

that Lucinda accepted the contract, and remained at the old place with her father and mother, and cared for and maintained them until their respective deaths, which occurred during the Civil War; that after the death of her parents she continued to live on this tract of land until 1876, at which time she sold the same to her son, Frank Breeden, with the agreement that he was to have her right to the land in consideration of her support and maintenance during her life; that Frank H. Breeden continued in possession of this land under such agreement until 1890, when he sold the same to complainant, Thomas J. Breeden, under a written contract; that complainant at once took possession of the land and continued in actual, exclusive, uninterrupted, notorious, and adverse possession thereof against all the world from that time until the bringing of this suit.

It is further alleged that in 1895 the plaintiff instituted a suit in the circuit court of Rockingham county against the heirs at law of James A. Breeden, deceased, to obtain title to said tract of land; that when the cause came on for hearing it was dismissed, upon the ground that the suit should have been brought in the circuit court of the county of Page, in the county where the land lies; that inasmuch as the final decree appeared on its face to be a simple decree of dismissal, without stating the grounds upon which it was dismissed, and might be used in the second suit upon a plea of res adjudicata, and to prevent such use, complainant sought a rehearing in that cause; that the second suit was brought in the circuit court of Page county, and thereafter removed to the circuit court of Frederick county, where it was decided—the court holding that it should be dismissed upon the ground that it was admitted in the bill that Lucinda Breeden had entered into possession as a vendee of James A. Breeden, deceased, and that under such circumstances there could be no such thing as title to the land in controversy by adverse possession "as set forth in the bill and exhibits."

It is insisted that the court failed to observe that there was a distinction between a vendee claiming by adverse possession against a vendor under a contract of purchase not fully completed by such vendee, and a vendee remaining in possession of the property after a full completion of the contract of purchase and the payment of the consideration agreed upon; that immediately after the delivery of this opinion and before the final decree was entered in the cause the complainant asked leave to file an amended bill of complaint, in which he sought leave of the court to omit from the averments made by him in the original bill all the allegations made as to adverse possession of the tract of land in controversy and the prayer for relief based upon the ground of adverse possession, and to pray that the court should decree a conveyance of the title to him upon the other averments contained in the bill, to wit:

"That Lucinda J. Breeden had purchased the tract of land from the said James A. Breeden; that she had completed the payment of the entire purchase money or consideration due from her, and was entitled to a decree conveying the land to her; and that your complainant, claiming under her, was entitled to the relief sought in the original bill upon these facts, if, indeed, he was not entitled to the same upon the averments and proofs as to adverse possession."

Thereupon, as part of the final decree in the cause, the court entered the following paragraph:

"After the decision of this case and the drafting of the decree as above, the complainant asked leave to file his second amended bill, which paper is marked 'A' and placed in the papers of this suit, to the filing of which the defendants objected, and for reasons stated in writing and filed with the record the court refused to permit the plaintiff to file his said amended bill, but the dismissal of the original and first amended bill, and the refusal of leave to file the second amended bill is without prejudice to complainant to assert at law or in equity in any form as he may be advised any right which by this decree is not expressly adjudicated. And this cause is now ordered to be placed among causes ended."

In the original bill in this cause it is alleged that Lucinda Breeden was entitled to a decree conveying to her the land upon the completion of her contract, and that complainant, claiming under her, is entitled to a conveyance of the legal title, which had been transferred by her to Frank H. Breeden, and by him to complainant; that complainant had remained in possession of the land in controversy since the year 1890; that, if it should be deemed by the court that there could be no adverse possession until there was a disseverance of the privity of title between the heirs of James A. Breeden, deceased, and Lucinda Breeden and those claiming under her, that claimant was in possession, holding adversely to the title of the heirs, and claiming the same adversely to them, which was brought home to them in the year 1892, and again in the year 1895, at the time he was about to bring his first suit in the county of Rockingham; and that upon that ground, as well as the first-named ground, he was entitled to a decree perpetuating and preserving the proofs of his possession, and enjoining and restraining the heirs of James A. Breeden, deceased, and one Mary R. Brown, claiming under James K. Breeden, one of the heirs, from asserting title to said tract of land in any court and appointing a special commissioner of the court to convey the naked legal title to him.

It is further stated that, owing to the fact that the defendants in the original bill were continually interfering with his tenants living upon the tract of land, and had sought to prevent the complainant from turning one of his tenants out of the property after he repudiated the title of his landlord, necessity had arisen for a restraining order against such interference by defendants, or any agent or representative of theirs from interfering, with the tenants of the complainant until the controversy over the tract of land has been settled by decree of the court, and thereupon filed the first amended supplemental bill for that purpose.

It is further insisted that on the 13th day of August, 1913, it became necessary to bring certain new parties before the court, some of the heirs of James A. Breeden having died intestate, leaving heirs to whom the title of the deceased parties in interest had descended, and they were brought before the court by a second amended and supplemental bill.

It is also stated that on the 23d day of August, 1913, the defendants filed their joint and several answers to the bill of complaint, in which

they set up the final decree of November 8, 1906, in the first-named suit, in the circuit court of Frederick county, and claimed that by reason of the proceedings and decree in that cause the claim of complainant was res adjudicata, and that said suit and decree was a complete bar to his claim.

The defendants further say that on the 30th day of August, 1913, the cause was heard by the court under a decree which had been entered on the 23d day of August, 1913, in which it was recited that:

"By consent of parties, it is ordered that this cause be submitted to the court for determination of the question whether or not such proceedings have already been had affecting the land in controversy in the state courts of Virginia as would constitute res adjudicata and bar the complainant from further prosecution of the claims set up in this cause."

The matter again came on for hearing on the 30th day of August, 1913, at which time the following decree was entered:

"This cause came on again this day to be heard, and the court being of opinion that plaintiff's cause of action is res adjudicata, it is adjudged, ordered, and decreed that this cause be dismissed, and that the defendants recover of the plaintiff their costs in this behalf expended."

Upon a motion to rehear the matter the court set aside the decree entered on the 30th day of August, 1913. It further appears that on the 1st day of July, 1914, complainant filed a fourth amended and supplemental bill, by which he sought a discovery from and a production by the defendants of a certain letter set forth in the fourth amended and supplemental bill, which he deemed to be of some importance for the protection of his interests, but the defendants made answer that neither they nor their counsel had any such letter in their possession.

The cause was heard upon the pleadings and proofs, and a final decree entered on the 16th day of January, 1915, as follows:

"It is adjudged, ordered, and decreed that the plaintiff's bill and his sundry amended and supplemental bills be and they are hereby dismissed, and that the defendants recover of the plaintiff their costs in this behalf expended. And nothing further appearing necessary to be done herein, it is further ordered that this cause be striken from the calendar of pending causes."

From the entry of this decree complainant took an appeal to this court.

The decree of the lower court, entered on the 30th day of August, 1913, setting aside the original decree, among other things, contains the following language:

"The defendants' claim of estoppel by reason of former adjudication be and it is hereby overruled, but without prejudice to their right to further assert and rely upon said defense, if plaintiff fail to prove that he has had, for at least 15 years prior to the institution of suit at bar and after notice thereof brought home to the then holders of title under James A. Breeden, adverse and continuous possession of the tract of land in controversy."

It was obviously the purpose of the court in setting aside the original decree to afford complainant an opportunity to establish the fact that he had had open, notorious, and adverse possession of these lands for more than 15 years next preceding the date of the institution of

this suit. In pursuance of this provision of the decree considerable evidence was introduced by the respective parties bearing upon this point, which was, no doubt, duly considered by the court, and while the record is silent as to the reasons which induced the court to dis-miss the bill, it must be inferred that the action of the court was due to the failure of the complainant to show by a preponderance of the evidence that he had acquired title by adverse possession. We have carefully considered the evidence bearing upon this point, and feel that the court was amply justified in finding as a fact that complainant had not established title by adverse possession. The court having fail-ed to find in favor of the complainant, it is but fair to assume that it adhered to the view it entertained at the time the original decree was entered by Judge Harrison, to wit: That such decree was res adjudicata, and therefore a bar to complainant's right of recovery in this suit. Therefore the question arises as to whether the court below erred as respects this point.

The defendants rely upon the plea of res adjudicata, and in sup-port thereof insist that the questions now sought to be litigated were determined adversely to complainant in a suit instituted in the cir-cuit court of Page county by complainant against these defendants, and finally transferred to the circuit court of Frederick county, where a decree was entered by Judge Harrison, and that not only all matters actually adjudicated at the hearing, but every point which properly belonged to the subject of litigation, or which the parties, exercising due diligence, might have brought forward at the time, are deemed to have been adjudicated in favor of defendants, and therefore the de-cree in that cause is a bar to the right of recovery in this suit.

The bill filed in the state court contained an averment that Lucinda Breeden entered into a contract of purchase from James A. Breeden under which Lucinda was to have these lands in consideration of the support of her father and mother during their respective lives, that during the lifetime of Lucinda Breeden she fully complied with the provisions of said contract, and that Lucinda Breeden sold her interest to Frank Breeden who in turn sold to complainant, and that he holds the same by virtue of the alleged contract which Lucinda Breeden had for the purchase of these lands.

The bill of complaint in that cause also contains an allegation to the effect that the complainant and those under whom he claims had been in the adverse possession of the lands in controversy for more than 15 years prior to the institution of such suit. At the time Judge Harrison entered the decree he filed a memorandum setting forth his reasons for refusing to grant the relief which complainant sought, which is in the following language:

"The courts of Virginia have always regarded the common-law forum as the proper tribunal to decide controversies relating to the title of land. It appears to me from a reading of the cases that only in clear cases calling for equitable interference or under the authority of some statute has equity as-sumed jurisdiction to try title. I am not prepared to say that the case of Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720, 36 L. Ed. 532, will not be followed. While I find no express decision in Virginia confirmatory, un-doubtedly the tendency of several cases is that way. But the whole theory of

Sharon v. Tucker proceeds on the theory that there is virtually no dispute of fact, that no one with any substantial rights can call the jurisdiction in question, that the legal title has lost all life and stands simply as a menace to the true legal owner of the land, and that equity will give relief against such a cloud. I doubt, however, whether equity would extend relief, where the evidence is conflicting upon the facts of the case, and the conclusions to be reached involved in doubt and conjecture resulting from the determination of the credibility of witnesses, and the weight to be attached to their evidence.

"In the case under consideration the case which the complainant himself states does not seem to me to present a case of adverse possession under our Virginia decisions. His claim is that Lucinda Breeden entered into possession under a contract of purchase from James A. Breeden by which she was to have the land in consideration of the support of her father and mother during their lives, and that he holds by virtue of some transaction under her. In a number of cases of which it is only necessary to recite Chapman v. Chapman, 91 Va. 397, 21 S. E. 813, 50 Am. St. Rep. 846, it is laid down: 'Before adverse possession can arise between a vendor and his vendee, * * * where the vendor has retained the title and the statute * * * commences to run, the vendee must have dissevered the privity of title between them by the assertion of an adverse right, and openly and continuously disclaimed the title of his vendor, and such disclaimer be clearly brought home to the knowledge of the vendor.' In the numerous cases cited in the last-named decision it is held by the court that as between vendor and vendee there is privity of title, and the vendee holds in subordination of the vendor's legal title, and such possession cannot silently ripen into a title by adverse possession, no matter how great the lapse of time during which the possession may have continued. Clarke v. McClure, 10 Grat. (Va.) 305; Creigh v. Henson, 10 Grat. (Va.) 231; Nowlin v. Reynolds, 25 Grat. (Va.) 137; Creekmur v. Creekmur, 75 Va. 430; Whitlock v. Johnson, 87 Va. 323, 12 S. E. 614; Core v. Faupel, 24 W. Va. 238.

"There is not the slightest testimony in the case that there had been any disseverance of the privity between vendor and vendee, any disclaimer, or that knowledge of such adverse holding was brought home to the holder of the legal title. Such being the case under the claim as set forth by the complainant, it does not seem to me that there is any such adverse possession as equity would recognize as the basis of its jurisdiction. The testimony of complainant at most is very unsatisfactory. Lucinda gives her testimony at the same time the complainant gives his. He sets out the contract by which he holds the land. He gives an entirely different contract in his sworn bill and subsequent deposition. A statement is then produced from his mother Lucinda in which she denies the evidence she has previously given. Under the contract by which complainant claims the land, his title stands or falls by the character of the holding of Lucinda. She has never parted with any title, except verbally, and one feature of the verbal contract is that she is to be maintained on the land as long as she lives. So she has an interest in the property as to which her declaration is adverse. Letters are produced from complainant which are inconsistent with his present contention. For the last 10 or 15 years, almost up to the date of his alleged contract with his brother, the title has been in litigation or controversy, so that little weight can be attached to his claims or title. Nor do the tax receipts bear out the claim that the taxes have been paid continuously by Lucinda and those claiming under her. For a number of years from the death of James Breeden, Sr., they seem to have been paid by Elias Breeden, and have continuously been assessed in the name of James A. Breeden, in whom the legal title is, or his heirs. Even the alleged contract with his brother, at one time sworn to be verbal and to impose on complainant the burden of supporting his mother and for one pecuniary consideration, at another time sworn to be in writing and imposing upon the brother the burden of the mother's maintenance and for a different pecuniary consideration, even this contract professes to sell only the brother's right of possession and does not profess to sell the title to the land. On the whole it seems to me the evidence is not sufficient to sustain the bill. The only thing that can be shown is possession, and such possession is not hostile or at least on the complainant's own pretension is not hostile and therefore not adverse."

Thus it will be observed that there was an issue in that suit as to whether complainant had title by possession, and also as to whether complainant was the owner of the land through Lucinda as a purchaser. Even if this were not true, it clearly appears that the parties to that suit are now parties to this suit, and this suit relates to the same lands involved in that controversy. Such being the case, the decree in that suit applies to all matters which existed at the time of the entry of such decree, and which the complainant had an opportunity of bringing before the court. The Supreme Court of the United States in the case of Northern Pacific Railway Co. v. Slaght, 205 U. S. 127, 27 Sup. Ct. 442, 51 L. Ed. 738, in discussing this question said:

"In other words, plaintiff in error, as successor of the Spokane & Palouse Railway Company, again asserts title to the very property that was the subject of the other suit, the source of title only being different. If this may be done, how often may it be repeated? If defeated upon the new title, may plaintiff in error assert still another one, either in its predecessor or in itself, and repeat as often as it may vary its claim? The principle of res judicata and the cases enforcing and illustrating that principle declare otherwise."

In the case of Withers' Adm'r et al. v. Sims et al., 80 Va. 651, the court cites the following with approval:

"All those matters which were offered and received, or which might have been offered, to sustain the particular claim or demand litigated in the prior action, and those matters of defense which were presented or which might have been introduced under the issue to defeat such claim, are concluded by the judgment or decree in the former suit."

However, it is insisted by counsel for complainant that Judge Harrison's decree was erroneous and should be disregarded by this court. This court is without power to review the action of the state court in this instance, either by appeal or otherwise. If the decree in that court was erroneous, an appeal could have been taken to the Court of Appeals of Virginia, and complainant having failed to do so the questions therein determined are res adjudicata, and the same may be pleaded in bar of the right of recovery in any court in which it may again be sought to litigate such questions.

It is earnestly contended by counsel for complainant that the claim of the defendant is unconscionable. It is not within our province to pass upon this question, further than to say that we are of opinion that the legal effect of defendants' plea is such as to bar complainant's right of recovery.

For the reasons stated, the decree of the lower court is affirmed.