## Staunton.

## STEINMAN COAL CORPORATION AND STEINMAN DEVELOPMENT COMPANY v. MARY JANE FLEMING.

### September 23, 1926.

1. DEEDS—*Description of Property—Exception of Minerals, Coal and Timber—Exception to the Grant or Exception to the Warranty—Case at Bar.*—In the instant case the grantor in his deed to appellee did "here warrant generally the property hereby conveyed except coal, mineral and timber that has been previously sold."

   *Held:* That it was clear from the language used and its location in the deed that the clause "did not constitute an exception to the grant but only an exception to the warranty."

2. VENDOR AND PURCHASER—*Valid Parol Gift of Land—Subsequent Deed by Vendor.*—Where there has been a parol gift of land valid and enforcible in 1870, a deed from the donor to another in 1874 can convey no interest whatever in the coal and minerals under the tract conveyed by the parol gift, and an exception of coal and minerals in any other deed of the land cannot strengthen the claim of the grantee or his successors in title to the mineral rights conveyed by the previous parol gift.

3. CONTRACTS—*Construction—Practical Construction.*—The courts in case of doubt generally adopt the construction put upon a contract by the parties thereto and give it effect accordingly.

4. FRAUD, STATUTE OF—*Parol Gifts of Land—Validity of Parol Gift—Case at Bar.*—In the instant case in 1870 a father gave his son a tract of 169 acres of land out of a designated larger tract of land belonging to the father. The boundary lines of the gift were pointed out to the son by the father, and also shown by him to others. The father warned people cutting timber on his land not to cross the line which divided his land from the son's. The father surrendered possession of the land to his son and always thereafter recognized it as the son's land. The son took possession of the land as his own and erected buildings thereon, fenced and cultivated part of it and set out an orchard. The land was in the open, notorious, exclusive adverse possession of the son and those who claimed under him for forty-seven years. Complainant claimed as the successor in title to the son whereas defendants claimed under a deed of the father in 1874.

*Held:* That the parol gift of the father was valid, and that a decree for complainant annuling the father's deed of 1874 so far as it attempted to convey title to the minerals on the tract was correct.

5. REAL PROPERTY—*Possession of Land as Possession of Minerals.*—The possession of the surface of land is the possession of the coal and minerals under the land.

6. FRAUD, STATUTE OF—*Parol Gift of Land—Description of Wild and Unimproved Land.*—Where a parol gift of land is a gift of wild and unimproved land of little value, the law only requires that the land which passes by the parol gift be described with reasonable certainty.

7. FRAUD, STATUTE OF—*Parol Gift of Land—Description of Land Given.*—The definiteness or reasonable certainty as to the land intended, required to make valid a parol gift, is relative. Definiteness and certainty in the description of a city lot may be a matter of a few feet, of arable and valuable agricultural land it may be a matter of a few acres or rods. In a wild mountain country, among a primitive people, where the land has a nominal market value, a variation from absolute accuracy of a number of acres or of many rods may be negligible because a matter of indifference to the parties. The definiteness required is that everything of importance to the parties in the effect of the transaction should be expressed in the contract.

8. FRAUD, STATUTE OF—*Parol Gift of Land—Validity—Case at Bar.*—In the instant case complainant derived her title from a parol gift of land which was certain and definite in its terms; the acts in part performance thereof were made in pursuance of the gift; and a refusal to sustain the gift would operate a fraud upon the complainant, and place her in a situation in which she could not be adequately compensated.

*Held:* That the parol gift was valid.

9. VENDOR AND PURCHASER—*Bona Fide Purchaser—Possession as Notice—Parol Gift—Case at Bar.*—In the instant case, when in 1874 defendants' predecessors in title secured their deed to the coal and mineral rights in question, complainant's predecessor in title was in full possession of the tract claiming it as his own against all the world, under a parol gift from the grantor of defendants' predecessors in title.

*Held:* That such possession as the law was in Virginia at that time was notice to defendants' predecessors in title of the rights and claim of complainant's predecessor in title.

10. REAL PROPERTY—*Possession as Notice.*—Before the enactment of the recording act (section 5194 of the Code of 1919) the open and peaceable possession of land under a claim of right was notice to all the world of the right or claim of the person in possession, and where one bought land in the possession of another than his vendor or grantor, he was bound to take notice of such possession and all that it imported.

Appeal from a decree of the Circuit Court of Dicken-son county.   Decree for complainant.   Defendants appeal.

*Affirmed.*

The opinion states the case.

*A. C. Anderson* and *Chapman, Peery & Buchanan*, for the appellants.

*Chase & McCoy* and *G. Mark French*, for the appellee.

West, J., delivered the opinion of the court.

In 1856 Phillip Fleming secured a deed from the Warders conveying to him a tract of land in fee, supposed to contain 1,000 acres, which later, by actual survey, proved to contain 2,008 acres.  Prior to 1870 Phillip Fleming sold from this tract several boundaries of land, including one called the Collier tract and another known as the Rose tract.

Phillip Fleming was the father of John W. Fleming, who married Mary Jane Fleming, the appellee, in October, 1870.  Prior to the marriage Phillip Fleming gave to his son, John W. Fleming, a boundary of land out of his Warder tract, known as the "Rocky Place," containing 169 acres.  This tract was bounded by the Collier tract on the west and south, by the Rose tract on the east and southeast, and on the north by the lands of Phillip Fleming, which he later gave to his son, Preston.  While the parol gift of the land was made in 1870, the deed conveying the legal title to John W. Fleming was not executed and delivered by Phillip Fleming until 1878.

On December 18, 1874, Phillip Fleming sold and conveyed to J. D. Price and A. J. Steinman "all the

coal, iron ore and all other minerals and fire clay in,. under and upon all the lands conveyed to Phillip Fleming by the Warders in 1856." This deed was recorded December 21, 1874.

On February 23, 1878, Phillip Fleming and wife, in execution of the parol gift of the one sixty-nine acre tract, conveyed the same to John W. Fleming in fee.

In 1887, John W. Fleming sold and conveyed to H. H. Willard in fee fifty-four acres of the tract of land given him by his father. Through *mesne* conveyances this fifty-four acre tract became the property of Clinchfield Coal Corporation.

On November 19, 1889, John W. Fleming and wife conveyed the one hundred and fifteen acre tract to Solomon Fleming, who, with his wife, conveyed the same, on March 29, 1898, to the heirs of John Baker, who, by two deeds bearing date March 29, 1892, conveyed the same to John W. Fleming, who, on November 18, 1892, conveyed the same in fee to Mary J. Fleming, the appellee.

[1] The last mentioned deed, after conveying the land by boundaries, contains the following clause: "To have and to hold said tract or parcel of land unto the said party of the second part to her and to her heirs forever with all the appurtenances thereunto belonging and the party of the first part do here warrant generally the property hereby conveyed except coal, mineral and timber that has been previously sold and the privilege of making all roads for the purpose of mining and shipping said coal and timber on said land."

[2] It is clear from the language used and its location in the deed that the clause quoted does not constitute an exception to the grant but only an exception to the warranty. Besides, if the parol gift to John W. Flem-

ing was valid and enforceable, his rights vested in 1870, and the deed of 1874, under which appellants claim, conveyed to their predecessors in title no interest whatever in the coal and minerals under the one hundred and sixty-nine acre tract of which the one hundred and fifteen acre tract was a part; and in such event appellants' right to prevail in this case is in no way strengthened by the exception clause now under consideration, nor by any exception clause contained in any other deed conveying the one hundred and fifteen acre tract. And further, Solomon Fleming and the Bakers have never claimed any interest in the coal and minerals since the land was reconveyed to John W. Fleming, and have recognized Mary J. Fleming as the owner of the same. After holding an undisputed title to the property for thirty years, her right to it was never challenged except by appellants.

[3] The courts in case of doubt generally adopt the construction put upon a contract by the parties thereto and give it effect accordingly. 9 Cyc., p. 588.

Prior to 1911 A. J. Steinman acquired the undivided interest of J. D. Price in coal and minerals under the 2,008 acre tract deeded to them by Phillip Fleming.

In 1911 A. J. Steinman instituted an action of ejectment in the District Court of the United States at Big Stone Gap, Virginia, against Clinchfield Coal Corporation, which was at that time the owner of the fifty-four acre tract conveyed to H. H. Willard, to recover the coal and minerals under the fifty-four acre tract, upon the strength of the deed of December 18, 1874, from Phillip Fleming to Price and Steinman.

The Clinchfield Coal Corporation filed its bill in equity against A. J. Steinman, alleging, among other things, the parol gift by Phillip Fleming of the one hundred and sixty-nine acre tract to John W. Fleming,

and the deed of 1878 conveying the same to John W. Fleming, in execution thereof; the possession of the land by John W. Fleming, adversely and continuously from 1870, and the improvements made thereon by him, and that the possession of John W. Fleming was notice to Price and Steinman when they made their purchase in 1874, and praying that the deed of 1874, under which they claim, be annulled as a cloud on its title to the fifty-four acre tract, and that Clinchfield Coal Corporation be enjoined from prosecuting its action of ejectment. The case was heard in the District Court, and on appeal to the Circuit Court of Appeals at Richmond the court granted the relief prayed for by enjoining the action of ejectment and cancelling the deed of 1874 from Phillip Fleming to Price and Steinman, in so far as it attempts to convey or conveys any rights in the said fifty-four acre tract.

In February, 1924, Mary Jane Fleming filed her bill in chancery, in the instant case, in the Circuit Court of Dickenson county, against the Steinman Coal Corporation and the Steinman Development Company, successors in title to the coal and minerals conveyed to Price and Steinman by Phillip Fleming, under the deed of 1874, alleging practically the same facts as were alleged in the bill by the Clinchfield Coal Corporation in the United States District Court, above referred to; that Price and Steinman were not innocent purchasers, and that their deed of 1874 was subject to the equitable rights of John W. Fleming under the parol gift and deed made in execution thereof; that the decision rendered by the United States Court in the *Clinchfield Coal Corporation Case*, involving the fifty-four acre tract, *supra*, holding that the grantees in the deed of 1874 took subject to the rights of John W. Fleming was an adjudication of the matter in controversy and

conclusive as to the rights of the parties in the instant case, and praying that the deed of 1874 be cancelled as a cloud on appellee's title to the one hundred and fifteen acre tract.

Defendants filed a demurrer to the bill which was overruled. Depositions were taken and filed along with a transcript of the record in the suit in the Federal court, involving the fifty-four acre tract. On the final hearing a decree was entered cancelling and annulling the deed of December 18, 1874, from Phillip Fleming to Price and Steinman, in so far as said deed "attempts to convey, or pass any title or conveys or passes any title to any coal, iron ore, or other minerals, or fire clay, or any rights or privileges in, upon, over or under the part of the said one hundred and sixty-nine acre tract, not included in the said boundary lines of the said fifty-four acre tract."

From this decree an appeal was allowed to this court.

This suit was instituted to remove a cloud from Mary Jane Fleming's title to the coal, mineral and fire clay under the one hundred and fifteen acre tract of land.

Appellants claim title thereto under the deed of December 18, 1874, from Phillip Fleming to J. D. Price and A. J. Steinman, conveying the coal and minerals under the one thousand (2,008) acre tract. Appellee claims title thereto under the parol gift of Phillip Fleming to John W. Fleming and the deed given in execution thereof on February 23, 1878. Appellants and appellee are the only parties claiming any interest in the coal, minerals or fire clay in controversy.

In our view of the case it is necessary for us to decide only one question: Was John W. Fleming's

title by parol gift superior to that conveyed to Price and Steinman by the deed of December 18, 1874?

It is not controverted that Phillip Fleming made a parol gift to his son, John W. Fleming, of a tract of land containing one hundred and sixty-nine acres, but contended that the facts proven do not bring the gift within the rule which entitles it to be taken out of the operation of the statute of frauds.

[4] It sufficiently appears from the evidence:   That in 1870 Phillip Fleming gave his son, John W. Fleming, a tract of one hundred and sixty-nine acres of land out of his Warder tract of 2,008 acres; that the land was bounded by the Rose and Collier tracts, and separated from the lands of Phillip Fleming by a "ridge," and that Phillip pointed out the boundary lines to John and designated certain trees as corner trees and side line trees; that Phillip also showed the boundaries to several parties who testified as witnesses in this case; that Phillip warned people who were cutting timber on his land not to cross the line which divided his land from John's; that Phillip, in pursuance of the gift, surrendered the possession of the land to John and always thereafter recognized it as John's land; that John, in reliance on the gift, took possession of the land as his own and erected thereon a small dwelling house, which he occupied as a permanent home, a barn, a corn crib, and other outbuildings, cleared, fenced and cultivated a portion of the land and set out an orchard thereon; that he began clearing land near the northern boundary line which is the only line now claimed to be uncertain; that the land has been in the open, notorious, exclusive, adverse possession of John W. Fleming and those who claim under him from the date of the gift to the present time; that to take from the appellee the coal and mineral under

this land after forty-seven years possession thereof by her and those under whom she claims would result in a legal fraud upon appellee and place her in a situation which could not be adequately compensated in damages.

[5] The possession of the surface was the possession of the coal and minerals under the land. *Steinman* v. *Vicars*, 99 Va. 600, 39 S. E. 227.

[6, 7] Under the circumstances disclosed by this record, the property given being wild unimproved land of little value, the law only requires that the land which passes by the parol gift be described with reasonable certainty. Woods, circuit judge, in *Steinman* v. *Clinchfield Coal Corporation*, *supra*, 240 Fed. 561, 133 C. C. A. 365, laid down the rule as follows: "The definiteness or reasonable certainty as to the land intended, required to make valid a parol gift, is relative. Definiteness and certainty in the description of a city lot may be a matter of a few feet of arable and valuable agricultural land it may be a matter of a few acres or rods. In a wild mountain country, among a primitive people, where the land has a nominal market value, a variation from absolute accuracy of a number of acres or of many rods may be negligible because a matter of indifference to the parties. The definiteness required is that everything of importance to the parties in the effect of the transaction should be expressed in the contract. The location or indication of a line varying from accuracy even by a number of rods ought not to be regarded vital when the parties themselves would have regarded it unimportant."

[8] A careful examination of the evidence convinces us that the parol gift of the one hundred and sixty-nine acre tract was certain and definite in its terms; that the

acts in part performance were made in pursuance of the gift; and that a refusal to sustain the gift would operate a fraud upon the appellee and place her in a situation in which she could not be adequately compensated. This meets the requirements of the principles of equity applicable to such cases. *Wright* v. *Puckett*, 22 Gratt. (63 Va.) 370; *McLin* v. *Richmond*, 114 Va. 244, 76 S. E. 301.

[9] When Price and Steinman secured their deed from Phillip Fleming in 1874, John W. Fleming was in full possession of the one hundred and sixty-nine acre tract, claiming it as his own against all the world, and such possession was, as the law was in Virginia at that time, notice to them of the rights and claims of John W. Fleming. Good faith required them to inquire as to his rights, and failing to do so they are chargeable with the knowledge they might have obtained. Had they inquired they would have learned that John W. Fleming was the owner of the complete equitable title to the one hundred and sixty-nine acre tract and was entitled to a conveyance of the legal title, and that Phillip Fleming could not convey to them any title superior to the rights of John W. Fleming.

[10] In *Chapman* v. *Chapman*, 91 Va. 400, 21 S. E. 813, 50 Am. St. Rep. 846, the law by which the rights of the parties must be determined is stated thus: The open and peaceable possession of land under a claim of right is notice to all the world of the right or claim of the person in possession, and where one buys land in the possession of another than his vendor or grantor, he is bound to take notice of such possession and all that it imports. This is, we think, the rule to be deduced from the authorities. It is the duty of a purchaser to inquire into the fact of the possession and he will be affected with knowledge of whatever right or interest the party in possession may have in

the land which such inquiry would have disclosed. The rule has its foundation in the good faith of the purchaser. If he makes the inquiry, he would acquire knowledge of whatever right or claim, if any, the person in possession may have; and if upon inquiry he receives information of any right or interest of such person in the land, it would be *mala fides* to attempt to deprive him of it. So, if he fail to make inquiry, he has not discharged the duty which good faith imposed on him, and whatever knowledge he might have acquired by means of an inquiry duly and reasonably prosecuted, the law imputes to him."

On page 404 it is said: "And on the same principle it follows that open, notorious and exclusive possession in a person other than his vendor, is a fact of which a purchaser must inform himself and he is conclusively presumed to have done so."

In the case of *Steinman* v. *Clinchfield Coal Corporation, supra,* the court, in a controversy between A. J. Steinman, who was claiming under the deed of 1874, and Clinchfield Coal Corporation, owner of the fifty-four acre tract which was formerly a part of the one hundred and sixty-nine acre tract, enjoined and restrained A. J. Steinman from attempting to assert title to the coal and minerals and other rights and privileges pertaining thereto in the fifty-four acre tract, and cancelled the deed of 1874, in so far as it undertakes to convey rights in the tract of fifty-four acres. Whether or not the decision in that case is *res adjudicata* as to the matter in controversy between the parties in the instant case, we deem it unnecessary to decide, but the reasoning of the court in that case is very persuasive and its conclusions will, in substance, be followed here.

The decree of the circuit court will be affirmed.

*Affirmed.*