Laura B. HOGAN et al., Appellants,

v.

Alphonso PRICE et al., Appellees.

No. 6782.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 30, 1954.

Rehearing Denied Jan. 27, 1955.

Hardy Moore, Paris, for appellants.

Frank D. Wear, Paris, for appellees.

WILLIAMS, Justice.

A deed executed by J. E. Hogan, the common source of title, dated November 27, 1943, forthwith recorded in the Lamar County deed records, purports to convey in fee simple with general warranty of title to appellee Alphonso Price and wife, Tussie, "a part of Block 3 in the Kinzie A. Pickard addition to the City of Paris, Texas, as shown on the plat of said addition in deed book S, Vol. 2, page 592, Lamar County Deed Records.

"Beginning at a stake in the E.B. line of Pickard Street. 100 feet North of the N.W. corner of Lot 1, Block 3 of said Pickard original addition to the City of Paris, same being the N.W. corner of a lot this day deeded to me by Alf A. Edwards. Thence East 210 feet, a stake in the W.B. line of High Street. Thence North with the W.B. line of High Street 50 feet a stake. Thence West 210 feet a stake in the E.B. line of Pickard Street. Thence South with the E.B. line of Pickard Street 50 feet to the place of beginning. Being the same property described in deed from H. B. Biard and wife to J. E. Hogan on February 2, 1934, recorded in Vol. 221, Page 449, Deed Records of Lamar County, Texas." The metes and bounds calls in both deeds are identical. The deed recites a $700 cash consideration then paid.

Shortly after receipt of the deed, the Prices moved into the house situated on the East side of the tract where they resided until July, 1946, when according to the testimony of A. H. Jones he purchased from the Prices a part of the tract and moved into the house that the Prices had occupied. This deed into Jones was not introduced in evidence. We will assume that this parcel so acquired from the Prices was 50 x 128 as testified to by Jones, and was the East

128 feet of the 200-foot parcel. If so, this would leave 82 feet remaining on the West end on which some sort of house or dwelling was situated.

On December 12, 1947, the same J. E. Hogan executed and delivered an instrument to A. H. Jones which on its face appears to be a deed of conveyance to the latter, the plaintiff below, of a parcel of land described in the deed as follows: "All that certain tract or parcel of lots three and four in block three Pickard Addition to the City of Paris as shown by plat of said Addition as surveyed, platted and of record in the Lamar County Records." This record purports to convey the fee simple title with general warranty of title and recites a total consideration of $950 paid and secured to be paid by A. H. Jones as follows: $100 cash and a vendor's lien note for $850 payable in monthly installments of $20 each. It does not appear that this deed was ever filed for record. Jones had paid a total of $365 on this purchase at time of trial. Hogan died testate in December 1948. His estate was fully solvent. Laura B. Hogan, his widow, and Martha Jo Cass, his only child, were his sole heirs and devisees. Tussie Price died in June or July, 1949, leaving Alphonso Price as her sole heir at law. The plat of the Kinzie A. Pickard Addition is not in evidence.

Price and his wife although proud of their native State of Texas, yielded to the call to go to the Northwest and in the latter part of July, 1946, migrated to the State of Oregon, where, all agreed with pride, that she became the first colored school teacher to be selected for the public schools of that state. The early days of Alphonso's activities will not be detailed for it is sufficient to state that after many trials and errors he finally succeeded in reaching the position of a Pullman porter. Upon the death of Tussie, his wife, in June or July, 1949, he accompanied her body back to Lamar County for burial. It was upon this trip, according to Jones' testimony, that Alphonso "raised sand" with him about renting and collecting rents off the house situated on the West end of the strip, and at this time "ousted and booted" Jones out and he (Price) took control of it and had collected the rents since then. In describing this event which occurred July 1, 1949, Jones testified: "He says, 'Well, that's my place.' Well, it made me mad and I didn't have a whole lot to say; anyway, I was tired and hungry, so I says, 'Well, that's all right.' He said, 'If you ever want it, I will sell it to you,' just like that.

"Q. So when he said it was his place you said, 'That's all right with you?' A. Well, if it was his place, it was his place. I told him, 'I have got the deed.' He says, 'I have got one, too. I have been paying taxes on it.'

"Q. And so you just let him have it. A. I couldn't help myself after the man called down there and told me he had taken possession of it and everything, I couldn't help myself."

Litigants agreed that Hogan bore the reputation of being an astute business man, well acquainted with property values. Upon learning that the dictionary defines "astute" to mean shrewd, subtle or crafty, we are in accord. The description of the land conveyed in his deed to the Prices as hereinabove set out is certain and yields to no claim of ambiguity or uncertainty. The description of the tract in his deed into Jones leaves empty hands. The evidence does not disclose when or where Price and wife obtained an abstract to the original 50 x 200-foot tract but the title to the whole was examined by an attorney at the time Jones purchased from Price and wife in 1946. The title at that time was approved before the sale by the Prices to Jones was consummated. Some evidence introduced is to the effect that Price expressed some surprise when this lawyer told Price that his deed from Hogan covered more than 128 feet and he could sell that much to Jones. Some evidence is to the effect that the $750 cash consideration recited in the deed from Hogan to Price represented only about 40% of its true value. We need not tarry on such estimate or recall the values on realty in 1942 in the depth of the depression. In view of the observations to follow we omit further details in the evidence

with respect to an asserted mutual mistake in the description of either deed.

The trial court sustained the plea of the four-year statute of limitation, Art. 5529, R.C.S. of Texas, urged by the defendant Alphonso Price to plaintiff A. H. Jones' suit and cross-action and to the cause of action and cross-action asserted against him by cross-plaintiffs (Laura Hogan and Martha Jo Cass and husband) and entered a take-nothing judgment in favor of Price as against all litigants and that he be quieted in his title to and possession of the 50 x 82-foot parcel of land. And based on the asserted breach of the warranty of title under the deed by Hogan, the court cancelled and held for naught the outstanding vendor's lien note and awarded Jones judgment against Laura B. Hogan, Martha Jo Cass and husband, the sum of $365, the amount that Jones had paid on the note.

The transcript discloses a battle of the century with respect to pleadings. From April 3, 1951, the date appellee A. H. Jones filed his original petition, until a trial amendment was filed during the trial to the court, had on April 19, 1954, numerous amended original petitions cross-actions and amended original cross-actions and answers were filed. Jones appears to have been made whole by the judgment and to be satisfied and he does not appeal. Price, an appellee, was left undisturbed in his peaceful possession of this parcel of ground. So in the consideration of the complaint of Hogan's heirs and devisees, the appellants, we will confine our observations to only such data in the pleadings we deem pertinent to the plea of limitation sustained by the court under the provisions of Art. 5529, supra, which reads: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

Plaintiffs' original petition was in the statutory form of a trespass to try title action in the elements as detailed in Rule 783, Texas Rules of Civil Procedure, in which he described an 82 x 50-foot plat of ground off the West end of the 200-foot strip and in which he sought $525 damages. Alphonso Price was named as defendant. On June 24, 1953, Jones filed his first amended original petition in which he named above devisees and heirs of Hogan as necessary parties; set up that omission of the description of the land into him from Hogan was a result of a mutual mistake; alleged the execution of the vendor's lien notes, the payments on same; and sought reformation and in the alternative, based on breach of warranty, prayed that the vendor's lien notes be cancelled and he be awarded judgment against the named heirs and devisees for amount he had paid. A count in an amended answer and cross-action filed on March 12, 1954, by Laura B. Hogan and Martha Jo Cass joined by the latter's husband alleged that the Hogan to Jones deed was intended to describe and include the 82 x 50-foot parcel of ground; set upon the outstanding vendor's lien note and prayed for the amount due on the note and foreclosure of their asserted vendor's lien on the 82 x 50 plot. This pleading was the first that had been filed by any litigant attacking the Jones-Price deed. It contained an allegation reading: "The above described lands (82 x 50) were included in a deed of conveyance executed to Alphonso Price during the life time of J. E. Hogan * * *. By mutual mistake and inadvertence the deed so executed included a description of the above described tract of land, but was intended to cover only the east one-half of said lot. Accordingly, a deed of reformation should be herein rendered." The original answer and cross-action of Laura Hogan, Martha Jo Cass and husband was filed June 30, 1953. Above details of the pleadings have been given in view of the provisions of Art. 5539b, Vernon's R.C.S., urged by appellants to toll the running of the statute of limitation, Art. 5529, supra. Article 5539b, supra, reads:

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no

subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. * * *"

We need not determine on which date title to the 50 x 82 spot of land grounded on an alleged mutual mistake between either Hogan and Jones or Hogan and the Prices was first raised under the pleadings above detailed. If it be assumed that such issue was raised by the Hogans under their amended cross-action, filed on March 12, 1954, or even when they were made parties to this suit and filed their original answer and cross-action on June 30, 1953, more than nine years had elapsed. If by any stretch in the construction of Art. 5539b it be construed that Jones' original petition against Price, an action in trespass to try title which was filed in 1951 tolled the four-year statute of limitation, this would be more than seven years after the date of the Hogan-Price deed.

Applicable to the disposition of this limitation plea, sustained by the learned trial court, is the rule stated in Kahanek v. Kahanek, Tex.Civ.App., 192 S.W.2d 174, 176, with authorities there collated, namely: "It is also settled that a distinction has been written into our Texas law under that statute, based upon whether the party seeking to correct the mistake is the grantor or the grantee; the rule being that if such actor be the grantor, then he is charged, as a matter of law, with knowledge of the contents of his deed from the date of its execution, and limitation begins to run against his action to correct it from that date." See also Hutchins v. Birdsong, Tex.Civ.App., 258 S.W.2d 218. As the sole heirs and devisees of Hogan, the appellants stand in his shoes in the application of this rule. The facts that Hogan was considered an astute business man, the unusual description set out in his deed into the Prices, the deed's recordation through the years, and Price's possession of abstract of title further fortify the application of above rule and the conclusion that the relief sought by appellants is barred by the four-year statute of limitation.

With my thanks and deep appreciation to the Bench and Bar of Texas who have been charitable and indulgent with my efforts through the past twenty-two years, let this be "30" for me, at least for the present.

The judgment of the trial court is affirmed.