Aria DAVIS et al., Appellants,

v.

Linnie Lee ANDREWS et al., Appellees.

No. 16036.

Court of Civil Appeals of Texas.
Dallas.

Sept. 28, 1962.

Rehearing Denied Oct. 19, 1962.

Reeves & Reeves, Tyler, for appellants.

Clemens, Knight, Weiss & Spencer, San Antonio, Harold B. Sanders, Dallas, Enoch G. Fletcher, Grand Saline, and L. F. Sanders and C. L. Stanford, Canton, for appellees.

WILLIAMS, Justice.

This is an interpleader suit involving the construction of a mineral deed. By deed dated June 2, 1930, Henry York, and wife, Ola York, Mrs. Ella York, a widow, G. N. York and wife, Dennie York, and Aria Davis joined by her husband L. L. Davis as grantors, conveyed, subject to oil and gas leases, a 1/32nd of 1/8 mineral interest in 50 acres of land of the John Walling Survey in Van Zandt County, Texas.[1]

This deed, omitting immaterial portions, as well as the description of the land, reads as follows:

"We, Henry York and wife, Ola York and Mrs. Ella York, a widow, of Smith County, Texas, G. N. York and wife, Dennie York of Wood County, Texas, and Aria Davis joined by her

1. This 50 acres of land is the same land but involving another and different mineral deed construed by this Court in

Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528, writ ref.

husband L. L. Davis of Van Zandt County, Texas, for and in consideration of the sum of Ten Dollars ($10.00) cash in hand paid by J. T. York, hereinafter called Grantee, the receipt of which is hereby acknowledged, have granted, conveyed, assigned and delivered and by these presents do grant, sell, convey, assign and deliver unto the said Grantee an undivided ⅟₃₂nd of the usual one-eighth interest in and under, and that may be produced from the following described land situated in Van Zandt County, Texas, to-wit: * * *

"This conveyance is intended to cover the above described 50 acres of land and does not affect interest in any excess acreage there may be in the above described tract of land together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals and removing the same therefrom.

"Said land now being under an oil and gas lease executed in favor of F. L. Luckel it is understood and agreed that this sale is made subject to the terms of said lease but covers and includes one-thirty-second of all the oil royalty, and gas rentals or royalty due and to be paid under the terms of said lease, in so far as it covers the above described property.

"It is understood and agreed that none of the money rentals which may be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited then and in that event undivided one-thirty-second of the lease interest and all future rentals on said land for oil, gas and other minerals privileges shall be owned by said Grantee herein owning ⅟₃₂nd of all oil, gas and other minerals in and under said lands together with ⅟₃₂nd interest in all future rents.

"To have and to hold the above described property, together with all singular the rights and appurtenances thereto in any wise belonging unto the said Grantee herein, his heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said Grantee herein, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, *for a period of 20 years from date hereof and no longer."* (Emphasis supplied.)

C. F. York and wife Lillian York executed and acknowledged the above deed, but were not named therein as grantors. On November 21, 1930, C. F. York and wife Lillian York, as grantors, executed and delivered a correction deed to J. T. York, in which the grantors recite the execution of the prior deed and the failure of that deed to contain their names as grantors. The correction deed does not anywhere contain that part of the quoted portion of the prior deed reading *" * * * for a period of 20 years from date hereof and no longer"*.

Oil was discovered in paying quantities on the land in question prior to 1930 and has been continuously produced therefrom to the date of the trial. The Pure Oil Company is the admitted owner of oil and gas leases on the property.

On October 13, 1958 The Pure Oil Company, as stakeholder, instituted this suit in the nature of a bill of interpleader naming therein a large number of defendants. Defendants aligned themselves in this lawsuit as follows: Aria Davis, and husband, L. L. Davis, and others (sometimes referred to as the York Group), and being the heirs of the grantors under the two deeds described above, as appellants; and Linnie Lee Andrews, and others (sometimes referred to as the Persons Group), being the remote grantees under J. T. York, as appellees.

The Pure Oil Company alleged that it had been confronted with conflicting claims of interest by the two groups of defendants

named, said contentions growing out of the construction to be placed upon the two deeds described above, and asked the court to determine the respective interest of the parties and deliver to the rightful owner the proceeds of oil and gas that had been produced from said property for a long period of time preceding the filing of this suit.

The York Group (appellants) answered, contending that the deeds in question evidence limitation of the grant which terminated 20 years after June 2, 1930. In the alternative, they say that the conveyance of June 2, 1930 was ambiguous and that it was the intention of the parties that the interest conveyed would terminate after 20 years. Further, in the alternative, they alleged that through mutual mistake of the parties that the instrument dated June 2, 1930 did not convey the true meaning intended by the parties to limit the grant to a period of 20 years and therefore the court was requested to reform the instrument to correctly reflect such alleged intent.

Appellees, (Persons Group) answered, pleading that under the conveyance in question they were the owners in fee of the interest conveyed and that the limitation of 20 years applied to the warranty only. In answer to appellants' prayer for reformation, appellees pled the statute of limitations, the statute of frauds, estoppel on the ground that appellees were bona fide purchasers, stale demand and laches.

Appellants during the trial offered to introduce testimony of Mrs. Aria Davis, L. L. Davis and Mrs. Ola York, to the effect that some few days prior to June 2, 1930 J. T. York, a nephew of Mrs. Ella York came to the York family in an effort to purchase royalty under the 50-acre of land in question; that appellants advised J. T. York that they had sold some mineral interest under the land but that same had been limited in the grant for a period of 20 years and that they would not make another sale of royalty unless the grant was likewise limited. That thereafter, J. T.

York had a conveyance drafted and returned to the York family with it, such conveyance being the one in litigation. That the York family, being inexperienced in the conveyance of mineral or royalty interest in lands, and since they were dealing with a nephew of Mrs. Ella York and a cousin of her children, relied upon his assertion that the limitation following the warranty clause in the conveyance would be effective to limit the conveyance for a period of 20 years from the date of such instrument, and that such conveyance would expire on June 2, 1950; that the York family did rely upon such representations and but for them, would not have executed same. This testimony was rejected by the trial court.

At the conclusion of the non-jury trial the court rendered judgment decreeing that The Pure Oil Company be discharged from liability to all defendants; that the appellees should recover title and possession of an undivided 1/32nd of 1/8 mineral interest in and under the 50-acre tract of land subject to the oil and gas leases of The Pure Oil Company, together with the proceeds of the production of the oil and gas from said tract of land attributable to said interest; and denying all relief sought by appellants.

At the request of appellants the court filed findings of fact and conclusions of law in which it was found that the language in the mineral deed of June 2, 1930 is clear and unequivocally free of ambiguity; that the limitation contained therein applies to the warranty and not to the grant. The court concluded that the instruments in question were sufficient to pass fee simple title to the interest conveyed, subject only to the limited warranty of 20 years.

By their first seven points on appeal, appellants contend in essence, (1) that the deeds in question clearly reflect that the grant thereby made was limited to a term of 20 years from and after June 2, 1930; (2) that the court erred in finding that the interest conveyed by the deeds was unlimited and that the only limitation was as to war-

ranty for a period of 20 years; (3) that the deeds in question were ambiguous and uncertain; (4) that since said instruments were ambiguous the trial court was in error in not permitting extrinsic evidence to be introduced to ascertain the intention of the parties; (5) that the court erred in refusing to permit appellants to introduce extrinsic evidence with reference to the circumstances surrounding the parties out of which the deeds in question arose to thereby correctly ascertain the intent of the parties.

## OPINION

At the threshold of our determination of the inquiry presented by appellants' points, i. e., the construction to be placed upon the mineral deeds, we deem it advisable and proper to focus attention upon the cardinal objective which is to ascertain the intention of the parties to the written instruments in question. The first rule of construction of a deed is that the intention of the parties be ascertained and given effect. 19 Tex.Jur.2d § 107, p. 391. Even this primary rule of construction must be immediately modified with the restriction that it is not the intention which the parties may have had, but failed to express in the instrument, but it is the intention which by said instrument they did express. Stated another way, the question is not what the parties meant to say but the meaning of what they did say. 19 Tex.Jur.2d § 111, p. 401; Cutrer v. Cutrer, Tex.Civ.App., 334 S.W.2d 599; Sims v. Woods, Tex.Civ.App., 267 S.W.2d 571; reversed on other grounds, 154 Tex. 59, 273 S.W.2d 617; Davis v. George, 104 Tex. 106, 134 S.W. 326; and Stewart v. McKee, Tex.Civ.App., 150 S.W.2d 415; First National Bank of Snyder v. Evans, Tex.Civ.App., 169 S.W.2d 754. Again, it has been said that the intention as expressed in the deed must be given effect, regardless of the intention that the parties had intended to express but that they failed to express. If there is no ambiguity in a deed, the instrument will be enforced as written, even though it does not express the original intention of the parties.

19 Tex.Jur.2d § 107, p. 394; Amarillo Oil Co. v. McBride, Tex.Civ.App., 67 S.W.2d 1098.

Another and equally important rule of construction, sometimes called "four corners rule" is that the intention of the parties, and especially that of the grantor, is to be gathered from the instrument as a whole and not from isolated parts thereof. 19 Tex.Jur.2d § 112, p. 402; Texas Pacific Coal & Oil Co. v. Masterson, 160 Tex. 548, 334 S.W.2d 436.

Certain subsidiary rules of construction were recently announced in Ladd v. Du Bose, Tex.Civ.App., 344 S.W.2d 476, involving the construction of a mineral reservation, in which the court said:

(1) "A deed will be construed to confer upon the grantee the greatest estate that the terms of the instrument will permit.

(2) "It is a principle of universal application that grants are liberally, exceptions strictly, construed against the grantor.

(3) "Another applicable rule is that should there be any doubt as to the proper construction of the deed, that doubt should be resolved against the grantors, whose language it is, and be held to convey the greatest estate permissible under its language.

(4) "Where a deed is capable of two constructions the one most favorable to the grantee and which conveys the largest interest the grantor could convey will be adopted."

These, and similar rules of construction are set forth in City of Stamford v. King, Tex.Civ.App., 144 S.W.2d 923, writ ref.

A basic rule has been often announced that when the parties to an agreement finally enter into a writing to express the terms of the contract, the presumption is that all prior promises and agreements relating to the transaction have been

merged into and are fully expressed by the written instrument. If the terms of the written instrument are plain and unambiguous, then its provisions will be enforced as written, and cannot be added to, varied, or contradicted by parol testimony unless it is clearly alleged and proved that the execution of the instrument had been procured by fraud, accident or mistake.

■■■■ Whether an instrument is ambiguous is a question of law. The construction to be given an unambiguous instrument is a question of law and not one of fact. These elementary rules are so well established as not to require the citation of authorities.

Being ever mindful of these legal guideposts we turn now to an application of these rules to the instruments in question. Was the language of limitation utilized in the deed of June 2, 1930 intended by the parties to limit the grant, as contended by appellants, or was it merely intended to limit the warranty, as contended by appellees? Was the instrument dated June 2, 1930 ambiguous, as contended by appellants, or clear and certain and lacking ambiguity as contended by appellees?

One of the most important elements of the subject matter of a conveyance of land is the duration of the estate granted. When the duration of the estate granted is not expressed clearly the answer to the question presented may be affected by the legal presumption, resulting from the provisions of Art. 1291, Vernon's Ann.Civ.St. (1925) which provides:

"Every estate in lands which shall thereafter [hereafter] be granted, conveyed or devised to one although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed, a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

■■■ With this legal presumption in mind an examination of the granting clause in the deed of June 2, 1930 reveals nothing in the way of limitation of the grant by grantor to grantee of an undivided $\frac{1}{32}$nd of the usual $\frac{1}{8}$ interest in and to the oil, gas and other minerals under the land in question. Neither do we find any words of limitation in the habendum clause which grants to grantee, his heirs and assigns "forever" the interest conveyed in the granting clause. The only clause of limitation appearing in the instrument follows a comma at the end of the warranty clause, saying "for a period of 20 years from date hereof and no longer." Appellants argue that it is not reasonable that grantors would intend to limit the warranty clause for a period of 20 years. They say that such is not usually done. We are not impressed with this contention. The mere fact that something is not usually done does not render the doing of that act wrong or illegal. The fact that the parties have limited the warranty, though possibly unusual, does not destroy its validity. The question of limitation of warranty was discussed to some extent in Ladd v. Du Bose, Tex.Civ.App., 344 S.W.2d 476. The Supreme Court of Oklahoma in Whitman v. Harrison, 327 P.2d 680 construed an exception to the warranty, as did the Court of Appeals of Virginia in Steinman Coal Corp. v. Fleming, 145 Va. 731, 134 S.E. 696. Based upon these authorities, and reasoning generally, we see no legal barrier to a limit of warranty, as we find in this case. Indeed, it is not difficult to conceive that the grantor might reasonably desire to limit his warranty during the minority of an infant involved in the chain of title.

■■■ The nature and character of the warranty clause in a conveyance must be kept in mind in determining its relationship to the other parts of the conveyance. The very purpose of the warranty covenant is for the indemnity of the purchaser against a loss or injury he may sustain by a defect in the vendor's title. The warranty clause does not convey title nor does it determine

the character of the title conveyed. As our Supreme Court has said in City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448: the "general warranty does not constitute a part of a conveyance nor strengthen or enlarge the title conveyed."

The granting clause in a conveyance prevails over the other provisions of the deed. Sebastian Independent School Dist. v. Ballenger, Tex.Civ.App., 297 S.W.2d 238; Waters v. Ellis, 158 Tex. 342, 312 S.W.2d 231; Graham's Estate v. Stewart, Tex.Civ.App., 15 S.W.2d 72, err. ref.

A grammatical analysis of the habendum clause and warranty clause reveals that they are contained in a compound sentence, each complete in itself. It is a well recognized rule of grammatical construction that a qualified portion of a sentence qualifies that sentence only. The qualifying provisions, dealing with the limitation of 20 years, applies only to the warranty clause of the compound sentence. It necessarily qualifies only that part of the sentence relating to warranty and not as to grant.

After a careful and exhaustive analysis of the conveyance in question, and applying what we consider to be the established rules of construction, we are impelled to the conclusion that the intention of the parties, as reflected by their own language in the conveyance, was to limit the warranty for a period of 20 years from the date of the instrument and it was not their intention, as expressed in said instrument, to limit the title conveyed to that less than fee simple.

Neither can we agree with appellants that the instrument was ambiguous. We agree with the trial court in his finding that the instrument was free of ambiguity. A contract is not ambiguous in the sense that parol evidence is admissible to explain its meaning unless application of the pertinent rules of interpretation leave a real uncertainty as to which of two or more possible meanings represent the true intention of the parties. An application of the rules of construction, discussed above, reveals no conflict of meaning and therefore no ambiguity results.

We believe that the question of ambiguity, presented by appellants, was decided adversely to them by our Supreme Court in the case of Harriss v. Ritter, 154 Tex. 474, 279 S.W.2d 845 wherein the parties provided for a reservation in a conveyance for a period of 10 years. The following reservation was involved:

"It is understood and agreed that the grantors herein reserve and except to themselves from this conveyance one-half of one-eighth of the oil, gas and other mineral royalty that may be produced from said land, and further reserve and except to themselves from this conveyance one-half of any bonuses or rentals that may be paid under the terms of any mineral lease for a period of ten years, but giving to the grantee herein, his heirs and assigns, the full and exclusive right to execute any and all mineral leases without being joined by the grantors."

The trial court permitted parol testimony on the question of whether the ten years reservation applied to the royalty, under the theory that the instrument was ambiguous. The Supreme Court held that the instrument was not ambiguous and that the construction given to the deed by the grantors and the grantees was immaterial and therefore parol evidence was not admissible to vary its terms. See also Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563.

Holding, as we do, that the instrument in question dated June 2, 1930, was not ambiguous it necessarily follows that the trial court did not err in refusing to permit parol testimony concerning the intent of the parties. Appellants' points of error one though seven, inclusive, are overruled.

What we have said also disposes of appellants' point eight complaining of the refusal

**426**

of the trial court to consider extrinsic evidence to show the circumstances of the parties at the time of the execution of the instrument so as to demonstrate ambiguity. The trial court, correctly finding that the instrument in question was not ambiguous, did not err in refusing parol testimony.

Appellants' ninth point complains of the action of the trial court in denying their plea for reformation of the deed of June 2, 1930. In considering this point it is to be recalled that appellants' allegations for reformation were based upon mutual mistake. We entertain grave doubt that the tendered testimony by bills of exception would be sufficient, as a matter of law, as to constitute evidence of mutual mistake. The evidence is unilateral on the subject of intention on the part of the grantors. The grantee is dead. However, this question becomes secondary for the reason that it is manifestly evident from the record in this case that appellants' action for reformation is barred by the four year statute of limitations, Art. 5529, V.A.C.S. (1925). Mathis v. Stockdick, Tex.Civ.App., 189 S.W.2d 106 writ ref.; Kahanek v. Kahanek, Tex.Civ. App., 192 S.W.2d 174; Hogan v. Price, Tex.Civ.App., 274 S.W.2d 745; Holt v. Hedberg, Tex.Civ.App., 316 S.W.2d 955; Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62.

Appellants contend that they had no knowledge of the alleged error in the mineral conveyance until this original suit was filed in 1958 and further that they did not have notice of the alleged error in 1950 at the time The Pure Oil Company commenced withholding payment of royalties. We think the law to be settled that a grantor is charged, as a matter of law, with knowledge of the contents of his deed from the date of its execution and therefore limitations should begin to run against his action to correct such deed from the date thereof. Kahanek v. Kahanek, Tex.Civ. App., 192 S.W.2d 174. However, if this not be true then certainly the statute of limitations began to run at the expiration of 20 years from the date of the deed, that is in 1950, being the time when appellants contend that the limitations of grant would expire. At that time a reasonably prudent person would be placed upon inquiry to ascertain the facts concerning the payment of royalty by the holder of the oil and gas lease on the property. There is no contention made by appellants that such was done. This suit was filed approximately eight years after the expiration of the 20 year limitation expressed in the conveyance of June 2, 1930 and therefore the limitation of Art. 5529, V.A.C.S. is applicable. Appellants' ninth point is overruled.

The judgment of the trial court is affirmed.