

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00310-CV

Manuel Artemio **GARZA**, Jr., Individually and As Next Friend of S.M.G., a Minor,
Appellant

v.

Thelma N. **GARZA**, Individually and as Trustee,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-06-211
Honorable Jose Luis Garza, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  February 27, 2013

AFFIRMED

Appellant, Manuel Artemio Garza, Jr., individually and as next friend of S.M.G., a minor, sued appellee, Thelma N. Garza, for claims arising from a real estate transaction. In the suit, Manuel brought claims for breach of warranty of title, common law fraud, statutory fraud, deceptive trade practices, and negligent misrepresentation. After a bench trial, the trial court rendered a take-nothing judgment on all claims. On appeal, Manuel argues the trial court erred in rendering a take-nothing judgment because he established four of his five claims as a matter of law. We disagree, and affirm the trial court's judgment.

## BACKGROUND

Manuel agreed to purchase a parcel of real property from Thelma. Manuel tendered Thelma payment of $9,200.00 in accordance with the parties' agreement. On May 20, 2003, Thelma, as trustee, executed a warranty deed conveying a parcel of real property located in Starr County, Texas, to Manuel's minor child, S.M.G. On February 17, 2004, Thelma executed a corrected warranty deed. In the corrected warranty deed, the parcel was described as:

> 5.636 acres of land more or less out of and forming a part or portion of Share No. 2-E of Porcion No. 70, Jurisdiction of Camargo, Mexico, now Starr County, Texas.

The deed further described the parcel by metes and bounds. Subsequently, a dispute emerged over ownership of the parcel. Heraldo Gonzalez and other individuals claimed they were the owners of the parcel. Eventually, an expert hired by Manuel concluded the deeds executed by Thelma did not convey title to S.M.G.

In 2006, Manuel filed the underlying suit against Thelma.[1] In his petition, Manuel alleged Thelma (1) breached the general warranty clause in the deed by failing to defend S.M.G.'s title to the parcel; (2) falsely represented that she had title to the parcel when she did not; (3) misrepresented her capacity to convey the parcel and/or title to the parcel during the transaction; and (4) committed fraud, breached an express warranty, and engaged in false, misleading, or deceptive acts and an unconscionable course of action during the transaction.

### *The Evidence Presented by Manuel*

At trial, Manuel presented testimony from three witnesses. Manuel did not testify on his own behalf. Manuel's first witness was Thelma. Thelma testified she divorced her husband Higinio Garza in 1991. The divorce decree awarded the couple's three children multiple tracts of

---

[1]Heraldo Gonzalez and other individuals were initially named as defendants in the suit; however, by the time of trial Thelma was the only defendant.

land located in Starr County. The divorce decree named Thelma as "guardian and [t]rustee of the children and their estate" and gave Thelma the authority to sell property that was owned by the children. The decree also stated that any real property owned by the couple but not awarded in the decree was awarded to Higinio. Thelma acknowledged that in 1997 her three children conveyed 23.24 acres "out of and forming a part or portion of Share 2-E of Porcion No. 70, Ancient Jurisdiction of Camargo, Mexico, now in Starr County, Texas," to Heraldo Gonzalez, Joel Gonzalez, and Rolando Gonzalez ("the Gonzalezes"). This conveyance was made by warranty deed, which was filed in the Starr County deed records on July 29, 1997. At the time of the conveyance, all of Thelma's children were over the age of eighteen.

Additionally, Thelma testified about an affidavit that was filed in the county deed records in 2003. The affidavit, which was admitted into evidence, was signed by Tomas Arredondo and Bernabe Guerra on March 27, 2002. The affidavit was filed in the Starr County deed records on March 28, 2003. In the affidavit, Arredondo and Guerra stated that they had been familiar with the use and occupancy of "2.466 acres of land out of and forming a part or portion of Share No. 2-E of Porcion No. 70 Ancient Jurisdiction of Camargo, Mexico, now Starr County, Texas" for the last forty years. Arredondo and Guerra further stated:

> That during all of said period of time said land has been actually occupied as stated [a]bove and such occupancy and claim of title have been open, visible, notorious, continuous, [p]eaceable, exclusive and adverse to all the world, and those claiming said lands as aforesaid [h]ave recognized no title superior to theirs during all of said period of time, and that the aforesaid [o]ccupants of said land have used, cultivated and enjoyed the same and have exercised exclusive [a]cts of ownership of the same and have appropriated the rents, income and revenues derived there from during all of said period of time without any hostile claim or interference from any source whatsoever.
>
> That the boundaries of said [land] and had been well marked and defined on the ground. That has no dispute or controversy with respect to the correct location thereof; but on the contrary, they have been well established, either by monuments on the ground or by acquiescence [] and general reputation during all of said period of time.

> That said land i[s] now in the peaceable, open[,] notorious, adverse possession of Thelma Canales, whose claim is under the above possessors in title.[2]

Thelma acknowledged that Arredondo and Guerra made the affidavit at her request; however, she denied that she drafted the affidavit for them.

The second witness Manuel presented was an expert, Sigifredo Perez, III. Perez, a lawyer, testified that he had reviewed the county deed records relating to the parcel. Based on these records, Perez concluded Thelma did not own the parcel she purportedly conveyed to S.M.G.; rather, Thelma had only a claim to the parcel. Perez also testified that the parcel was part of a larger 35.34-acre tract, and that the 35.34-acre tract had multiple undivided interest owners, including the Gonzalezes. Perez further indicated that these undivided interest owners held superior title to the parcel.

Finally, Manuel's lawyer testified about attorney's fees. Additionally, Manuel presented other documentary evidence, including the divorce decree, the initial and the corrected deeds executed by Thelma to S.M.G., the deed executed by the children to the Gonzalezes, and Perez's abstract of title with its attachments.

### The Evidence Presented by Thelma

Thelma presented the testimony of two witnesses. Thelma's first witness, Eulalio Aguilar, Jr., testified that he was a self-employed licensed land surveyor. Aguilar testified that he examined various documents concerning the parcel in dispute. These documents included the deed from Thelma's children conveying 23.24 acres to the Gonzalezes. Aguilar also reviewed the initial deed and the corrected deed from Thelma to S.M.G. Aguilar testified that the initial deed from Thelma to S.M.G. contained an error because it "encroached" on the 24.23 acres that Thelma's children had conveyed to the Gonzalezes. The corrected warranty deed fixed this error.

---

[2]Evidence was admitted showing Thelma N. Garza was also known as Thelma Canales.

According to Aguilar, the land conveyed in the corrected warranty deed did not encroach on the land conveyed by Thelma's children; the 23.24 acres conveyed by Thelma's children was separate and apart from the 5.636 acres Thelma conveyed to S.M.G.

Finally, Thelma testified on her own behalf. Thelma explained how she came to sell the 5.636-acre parcel to Manuel. The owner of an adjacent lot, Homero Garza, was aware that Thelma wanted to sell the parcel. Homero, who is Manuel's cousin, told Manuel about the parcel. Subsequently, Thelma and Manuel agreed on a sales price of $9,200.00. Manuel advised Thelma to title the land in the name of his child, S.M.G. According to Thelma, Elias Aguilar performed a survey of the parcel before the sale.[3] Elias also prepared both the initial deed and the corrected deed. Manuel paid Elias for these services; Thelma did not. Thelma said she did not tell Elias to identify her as "trustee" in the initial deed and the corrected deed. Thelma also said that at the time of the sale, she believed she was the children's trustee as provided in the divorce decree, and she believed she had authority to sell the parcel to Manuel. Thelma corrected her previous testimony in which she stated she was no longer the children's trustee. Thelma indicated that she confused the terms "guardian" and "trustee" in her previous testimony. Thelma indicated that under the divorce decree she remained the children's trustee.

After hearing all the evidence, the trial court rendered a judgment that Manuel take nothing on his claims. Manuel filed a notice of appeal, and requested findings of fact and conclusions of law. Manuel did not file a notice of past due findings of fact and conclusions of law. The trial court never issued findings of fact and conclusions of law.

ISSUES ON APPEAL

In the issues presented section of his brief, Manuel argues (1) the trial court erred in rendering a take-nothing judgment against him; (2) the evidence established, as a matter of law,

---

[3]The evidence does not show whether or not Elias Aguilar and Eulalio Aguilar, Jr. are related.

all vital facts to support a judgment in his favor; and (3) the trial court's judgment was "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust" and "was against the great weight and preponderance of the evidence." In the argument section of his brief, Manuel argues he established, as a matter of law, his claims for breach of the warranty of title, statutory fraud, and common law fraud. Additionally, Manuel argues he "demonstrated" that Thelma violated the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA). In the prayer of his brief, Manuel asks us to reverse the trial court's take-nothing judgment and render judgment on his claims proven as a matter of law.

We construe Manuel's brief as raising complaints about the legal sufficiency of the evidence with respect to his claims for breach of the warranty of title, common law fraud, statutory fraud, and DTPA violations. However, we do not construe his brief as raising complaints about the factual sufficiency of the evidence with respect to any of his claims. Although the issues presented section of Manuel's brief contains a reference to the factual sufficiency standard, the brief is otherwise devoid of any reference to the factual sufficiency of the evidence. We conclude that any possible complaint regarding the factual sufficiency of the evidence is inadequately briefed, and therefore, waived. *See* TEX. R. APP. P. 38.1(i).

### STANDARD OF REVIEW

When, as here, a trial court does not issue findings of fact and conclusions of law, it is implied that the trial court made all the findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The judgment must be affirmed if it can be upheld on any theory that finds support in the evidence. *Id*. When the appellate record includes a reporter's record, the legal and factual sufficiency of the implied findings may be challenged on appeal in the same manner as jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

When an appellant challenges the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a matter of law challenge, we first examine the record for evidence supporting the adverse finding, while ignoring all evidence to the contrary unless a reasonable fact-finder could not. *Id.*; *In re Estate of Vackar*, 345 S.W.3d 588, 595 (Tex. App.—San Antonio 2011, no pet.). If there is no evidence to support the adverse finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Dow*, 46 S.W.3d at 241; *Vackar*, 345 S.W.3d at 595. We sustain the legal sufficiency challenge only if the contrary proposition is conclusively established. *Dow*, 46 S.W.3d at 241; *Vackar*, 345 S.W.3d at 595. A matter is conclusively established only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005).

Manuel had the burden of proof on each of his claims at trial. To be successful on appeal, Manuel must demonstrate that the elements necessary to support his claims were conclusively established as a matter of law. *See Dow*, 46 S.W.3d at 241; *Vacker*, 345 S.W.3d at 595. Unless the evidence conclusively establishes all elements of Manuel's claims, we will affirm the trial court's take-nothing judgment. *See Dow*, 46 S.W.3d at 24; *Vacker*, 345 S.W.3d at 595.

**BREACH OF THE WARRANTY OF TITLE**

In his petition, Manuel alleged Thelma breached the warranty of title by failing to defend S.M.G.'s title to the parcel. Both the initial deed and the corrected deed from Thelma to S.M.G. included a general warranty clause in which Thelma promised to "warrant and forever defend" the premises against anyone claiming it. A general warranty clause does not convey title; nor does it determine the nature of the title conveyed. *Gibson v. Turner*, 294 S.W.2d 781, 787 (Tex. 1956); *Davis v. Andrews*, 361 S.W.2d 419, 424–25 (Tex. Civ. App.—Dallas 1962, writ ref'd

n.r.e.). The purpose of a general warranty clause is to indemnify the purchaser against a loss or injury he may sustain by a defect in the seller's title. *Gibson*, 294 S.W.2d at 787; *Davis*, 361 S.W.2d at 424.

To establish a breach of the warranty of title, a plaintiff must show that at the time the land was conveyed, there was a superior title outstanding in another person, and the plaintiff was evicted by the superior title holder. *Felts v. Whitaker*, 129 S.W.2d 682, 685–86 (Tex. Civ. App.—Fort Worth 1939), *aff'd*, 155 S.W.2d 604 (Tex. 1941). The eviction may be either actual or constructive; however, if the eviction is constructive, the warrantee must prove that paramount title has been positively asserted against him, and that the title asserted is in fact paramount. *Schneider v. Lipscomb Co. Nat'l Farm Loan Ass'n*, 202 S.W.2d 832, 834 (Tex. 1947). A warrantee cannot base a constructive eviction on his own voluntary act; if a warrantee cedes to a claim of title that is inferior to his own, the warrantor is not liable. *See Whitaker*, 155 S.W.2d at 606.

In conducting a legal sufficiency review, we first examine the record to support the trial court's adverse finding, while ignoring all evidence to the contrary. *See Dow*, 46 S.W.3d at 241. At trial, Manuel's theory was that the Gonzalezes were superior title holders. According to Manuel, the parcel Thelma conveyed to S.M.G. was part of the 23.24-acre tract previously conveyed to the Gonzalezes by Thelma's children. However, Thelma presented evidence to contradict this theory. Aguilar, a licensed land surveyor, testified that the parcel conveyed by Thelma to S.M.G. in the corrected warranty deed and the parcel conveyed by the children to the Gonzalezes were distinct parcels that did not overlap. Based on Aguilar's testimony, a reasonable fact-finder could have concluded that the Gonzalezes were not superior title holders. Therefore, there was some evidence to support the trial court's adverse finding on Manuel's breach of warranty of title claim.

Additionally, Manuel did not meet his burden to conclusively prove each and every element of his breach of warranty of title claim. To succeed on this claim, Manuel was required to conclusively establish not only the existence of a superior title holder, but also that S.M.G. was evicted by a superior title holder. *See Whitaker*, 129 S.W.2d at 685–86. Although Manuel's counsel told the trial court that S.M.G. was evicted from the parcel based on a default judgment rendered in a justice of the peace proceeding, no evidence of this eviction was presented at trial. No witnesses testified about an eviction. No documents about an eviction were admitted into evidence. Because Manuel failed to present proof of an eviction by a superior title holder, he did not carry his burden to conclusively establish a breach of the warranty of title.

### COMMON LAW AND STATUTORY FRAUD

To establish common law fraud, a plaintiff must show that the defendant (1) made a material representation; (2) the representation was false; (3) when the representation was made the defendant knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intent that the plaintiff should act upon it; (5) the plaintiff acted in reliance on the representation; (6) and the plaintiff thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). To establish statutory fraud, a plaintiff must show a transaction involving real estate where the defendant made a false representation of a past or existing material fact to the plaintiff for the purpose of inducing the plaintiff to enter into a contract, and that the plaintiff relied on the representation in entering into that contract. TEX. BUS. & COM. CODE ANN. § 27.01(a)(1) (West 2009). The elements of statutory fraud are essentially identical to the elements of common law fraud, except that, to recover actual damages, statutory fraud does not require proof that the defendant made a material, false representation knowing it to be false or made it recklessly as a

positive assertion without any knowledge of its truth. *In re Guardianship of Patlan*, 350 S.W.3d 189, 200 (Tex. App.—San Antonio 2011, no pet.).

We begin by reviewing the record for evidence that supports the trial court's adverse findings, while ignoring evidence to the contrary. *See Dow*, 46 S.W.3d at 241. There was some evidence Thelma did not make a material false representation knowing that it was false or with reckless disregard for the truth, with the intention that Manuel rely and act upon the representation. *See FirstMerit*, 52 S.W.3d at 758. Although Thelma testified about the circumstances surrounding the real estate transaction, she said nothing about any representations she made to Manuel. According to Thelma, many of the key terms of the transaction were negotiated by her neighbor and Manuel, and Manuel coordinated with Elias to have the parcel surveyed and the deeds prepared. Thelma further testified that she believed that she had the authority to convey the parcel to S.M.G. based on her status as trustee under the divorce decree and her adverse possession of the parcel. Thus, there was some evidence to support the trial court's adverse finding on Manuel's common law fraud claim.

Further, there was some evidence Thelma did not make a false representation of a past or existing material fact to Manuel for the purpose of inducing Manuel to enter into the contract. Thelma testified that Manuel learned of her desire to sell the property from her neighbor, that she and Manuel agreed on a purchase price, and that Manuel asked her to convey the parcel to S.M.G. No other evidence about the parties' discussions prior to the sale was presented. Based on this evidence, the trial court could have concluded Thelma did not make a false representation of a past or existing material fact to Manuel for the purpose of inducing Manuel to enter into the contract. Thus, there was some evidence to support the trial court's adverse finding on Manuel's statutory fraud claim.

Additionally, Manuel did not meet his burden to conclusively prove each and every element of his common law and statutory fraud claims. *See Dow*, 46 S.W.3d at 241. To prevail on his common law and statutory fraud claims, Manuel was required to conclusively establish that he actively and justifiably relied on Thelma's false representation. Reliance was a necessary element of both Manuel's common law and statutory fraud claims. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181–82 (Tex. 1997). In his brief, Manuel argues that Thelma "represented (in the deeds themselves) that she did have trustee capacity, that somehow she and/or her children still held title to the property[,] and that she could convey the property. [Manuel] relied on these representations in agreeing to purchase the property." However, the evidence fails to show the deeds themselves played any role in Manuel's decision to purchase the parcel from Thelma. Instead, the evidence shows that Manuel first agreed to purchase the parcel from Thelma, and then Elias prepared the initial deed at Manuel's direction. The evidence further indicates the corrected deed was not prepared until after the sale was completed. Without proof of Manuel's reliance on a material, false representation, Manuel failed to carry his burden to conclusively establish his common law and statutory fraud claims. *See id*.

**DTPA**

The elements of a claim under the DTPA are (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (West 2011). Reliance is a necessary element of a DTPA claim based on false, misleading, or deceptive acts. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012); TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(B) (West 2011). A DTPA claim may also arise from breach of express or implied warranties or from any unconscionable action or course of action. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(2)-(3) (West 2011).

At trial, Manuel had three theories for recovery under the DTPA. Manuel's first theory was based on Thelma's allegedly false representations about her authority to convey the parcel. Manuel's second theory was based on Thelma's alleged breach of the warranty of title. Manuel's third theory was based on Thelma's allegedly unconscionable action or course of action. The trial court found against Manuel on all of these theories.

1. **False Representation Regarding Trustee Status**

On appeal, Manuel argues he conclusively proved Thelma (1) caused confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; (2) represented that she had a status she did not have; (3) misrepresented her authority to negotiate the terms of the transaction. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(2), (5), (14) (West 2011). These arguments are premised on Thelma making false representations about her status as trustee for her children and her authority to sell the parcel. Specifically, Manuel argues that the evidence established that Thelma knew she was no longer allowed to act in her capacity as the children's trustee, and that her only claim to the parcel was an adverse possession claim. Further, Manuel argues the evidence showed Thelma knew her children had already reached the age of eighteen when they deeded their "Share 2-E interests" to the Gonzalezes.

Again, we first examine the record for evidence supporting the trial court's adverse findings, while ignoring all evidence to the contrary. *See Dow*, 46 S.W.3d at 241. At trial, the only evidence concerning Thelma's trustee status was the divorce decree. But the divorce decree contains no express time limit on Thelma's authority to act as trustee. Even the abstract of title prepared by Manuel's expert and admitted into evidence stated S.M.G.'s "interest is dependent upon . . . [a] determination of capacity of . . . Thelma N. Garza to act as Trustee for [her children]" under the divorce decree. Thus, there was evidence to support the trial court's finding

that Thelma did not make a false representation about her authority as trustee in violation of the DTPA.

Additionally, Manuel did not meet his burden to conclusively prove each and every element of his DTPA false representation claim. *See id.* Apart from the deed itself, no evidence was presented showing Thelma made any representation to Manuel that she was selling the parcel in her capacity as trustee. Additionally, no evidence was presented showing that Manuel relied on the statement in the deed concerning Thelma's trustee status. Reliance is a necessary element of a false representation claim under the DTPA. *Cruz*, 364 S.W.3d at 824; TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)(B). In the absence of evidence that Thelma made a false representation about her trustee status, and evidence that Manuel relied on this representation, Manuel failed to sustain his burden of conclusively proving a false representation under the DTPA.

### 2. **Breach of Warranty**

"An express warranty is created when a seller makes an affirmation of fact or a promise to the purchaser, which relates to the sale and warrants a conformity to the affirmation as promised." *McDade v. Texas Commerce Bank*, 822 S.W.2d 713, 718 (Tex. App.—Houston [1st Dist.] 1991, writ denied). To recover on a claim for breach of warranty under the DTPA, the plaintiff must establish that he was a consumer, that the warranty was made, that the warranty was breached, and that as a result of the breach, an injury resulted. *Id.* The DTPA does not create any warranties; a warranty must be established independently of the act. *Id.*

Here, Manuel asserts he established a breach of warranty under the DTPA because he conclusively proved all of the elements of his breach of the warranty of title claim. We disagree. As explained earlier in this opinion, the trial court's adverse finding on Manuel's breach of warranty of title claim was supported by the evidence, and Manuel failed to conclusively prove

all of the elements of a breach of warranty of title claim. Therefore, Manuel failed to sustain his burden of conclusively proving a breach of warranty under the DTPA.

### 3. **Unconscionable Action or Course of Action**

Section 17.45(5) of the Texas Business and Commerce Code defines an unconscionable action or course of action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45(5) (West 2011). "Section 17.45(5) is intended to be an objective standard." *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985); The relevant inquiry examines the entire transaction, not the defendant's intent. *Id*.

To prove an unconscionable action or course of action in the present case, Manuel was required to show that Thelma took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *See Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001). Here, the evidence supports the trial court's finding that Thelma did not engage in an unconscionable action or course of action under the DTPA. *See Dow*, 46 S.W.3d at 241. Thelma was the only witness to testify about her interaction with Manuel during the transaction. According to Thelma, she was introduced to Manuel by a neighbor who knew she was interested in selling the land. Many of the terms of the transaction were negotiated by Manuel and her neighbor. Thelma and Manuel agreed on a sales price of $9,200.00. Manuel then coordinated with Elias for a survey and for the preparation of the initial deed. Thelma stated she was not involved in the preparation of the deed. Moreover, nothing in Thelma's testimony indicated that Manuel lacked knowledge, or that Thelma took advantage of Manuel's purported lack of knowledge.

Manuel nevertheless argues he conclusively proved an unconscionable action or course of action under the DTPA because Thelma's actions resulted in a gross disparity between the

value received and the consideration paid. According to Manuel, "S.M.G. received absolutely nothing and paid $9,200.00 in consideration." However, even according to Manuel's own evidence, it cannot be said that S.M.G. received "absolutely nothing" from this transaction. Manuel's expert stated that S.M.G. obtained a "[p]ossible interest in 3.17 mineral acres lying in and forming part and portion of Share Numbered [] 2-E" and a "[c]laim upon 2.466 acres of land out of and forming a part of a portion of Share Numbered [] 2-E" through the conveyance. But Manuel presented no evidence of the value of this possible interest and claim.

In sum, the evidence fails to establish, as a matter of law, that Thelma took advantage of Manuel's lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. Therefore, Manuel failed to sustain his burden of conclusively proving an unconscionable action or course of action under the DTPA.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice